537 So.2d 850 (1989)
STATE of Louisiana
v.
Veronica ROSALES.
No. 88-KA-589.
Court of Appeal of Louisiana, Fifth Circuit.
January 18, 1989.
*851 Martha E. Sassone, Indigent Defender Bd., Gretna, for appellant.
John M. Mamoulides, Dist. Atty., Jodi McMillen, Dorothy A. Pendergast, Asst. Dist. Attys., Louise Korns, of Counsel, Office of the Dist. Atty., Gretna, for appellee.
Before CHEHARDY, C.J., and KLIEBERT and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
On July 9, 1987, Veronica Rosales and Emilio Gonzales were charged by bill of information with violation of LSA-R.S. 40:967, possession of a controlled dangerous substance, to wit: cocaine. Rosales, defendant herein, pleaded not guilty and filed a motion to suppress the evidence, asserting as the ground for suppression the absence of an arrest warrant. After a hearing the trial court denied the motion to suppress. Subsequently defendant withdrew her not-guilty plea and tendered a plea of guilty as charged, pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving her right to appeal the denial of her motion to suppress. She was sentenced to two years' imprisonment at hard labor, execution of the sentence was suspended, and she was placed on two years' active probation with a special condition that she pay a $10-per-month probation supervision fee.
On appeal defendant asserts the evidence seized was illegally obtained and should have been suppressed because the officers did not have probable cause to believe it contained contraband.
The evidence at the hearing of the motion to suppress consisted solely of the testimony of Deputy Timothy Valenti of the Jefferson Parish Sheriff's Office. He testified that on January 14, 1987, he was contacted by Detective Steve Gaudet of the New Orleans Police Department, who had information regarding some narcotics being imported into Jefferson Parish. Detective Gaudet wanted to coordinate an investigation with Deputy Valenti. Valenti and Gaudet met at Gaudet's office, where Gaudet *852 told Valenti he had information from an informant that two Spanish males named Emilio and Marino were en route from South Florida to New Orleans with a large shipment of cocaine. He gave a general description of the two men and said the man named Emilio was a member of the Cuban Mafia, was possibly a very dangerous person, and might be armed with machine guns, shotguns and pistols. The suspects would be in either "a 1978 white old Mercury or a two-tone Cutlass, about a 1980 model," with damage to the front end, both bearing Louisiana license plates. Further, when they arrived they were going to set up in a hotel room at either the Travel Lodge or the Quality Inn on the Westbank Expressway. The suspect named Emilio was described as a Spanish male, tall, thin, balding, and in his 50's.
Deputy Valenti testified further that he and Detective Gaudet set up surveillance of the Quality Inn at 3750 Westbank Expressway at approximately 7 p.m., where they observed was parked a blue Cutlass, about a 1980 model, with some damage to the front end as described by the informant. They maintained surveillance of that vehicle throughout the night.
At 2:15 a.m. they observed a Spanish female, the defendant, and Emilio Gonzales exit Room 207, proceed down the stairway and walk to the blue Cutlass parked in the lot right across from the room. They were walking very slowly, very nervously, looking around a great deal. Miss Rosales was carrying a large plastic bag. They entered the vehicle and sat in it for a few minutes, then backed up, circled the parking lot, and exited going down the Westbank Expressway, with Miss Rosales driving. They were going very, very slow in the far right-hand lane, going even slower as they proceeded.
At that point the officers decided to stop them, using police lights and sirens. While doing so Deputy Valenti observed Gonzales leaning down, appearing to place something under the front seat. As Valenti approached the vehicle, he identified himself as a narcotics detective and advised both subjects he was conducting a narcotics investigation regarding cocaine. Both subjects exited the vehicle at Valenti's request, whereupon he proceeded to the passenger side of the vehicle and retrieved a clear plastic bag containing approximately one-fourth ounce of white powder, which tested positive for cocaine in a preliminary field test.
Valenti placed both subjects under arrest and advised them of their Miranda rights. He then searched Miss Rosales' purse and found a white folded piece of paper containing approximately a gram of white powder, which also field-tested positive for cocaine.
Valenti testified further that when he stopped the vehicle and took the contraband from under the seat, he was concerned for his safety due to the information that the suspect might have machine guns and that Gonzales was possibly a member of the Cuban Mafia. He also stated the suspects' pattern of behavior was typical of drug dealers, who will take a new shipment of cocaine to a hotel room to "cut" the cocaine and package it in plastic bags.
Detective Gaudet did not appear at the hearing. The parties stipulated that if he had testified his testimony would be the same as Deputy Valenti's.
Information provided by an informant comprises probable cause for arrest where other sources corroborate the information, reducing the chances of a reckless or prevaricating tale and providing a substantial basis for crediting the hearsay. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Here the officers' visual observation corroborated the identifying information provided them by the informant. Although their surveillance alone did not corroborate the illegal possession of narcotics, it gave reasonable grounds for them to believe that remaining unverified bit of information was likewise true. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959).
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense.
*853 LSA-C.Cr.P. art. 215.1(A). Reasonable cause for such an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. State v. Belton, 441 So.2d 1195 (La. 1983). Based on both the informant's tip and their own observations, the officers here had reasonable cause for an investigatory stop.
The search of the vehicle and resultant seizure of the contraband were justified by Deputy Valenti's reasonable belief, based on the information provided him as well as his own knowledge of the drug trade, that the suspects were likely to be armed and that he was concerned for his safety. Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
A warrantless search of an automobile is justified when there is probable cause and exigent circumstances are present. State v. Tatum, 466 So.2d 29 (La.1985).
"[P]robable cause is a flexible, commonsense standard. It merely requires that the facts available to the officer would `warrant a man of reasonable caution in the belief' * * * that certain items may be contraband * * *; it does not demand any showing that such a belief be correct or more likely true than false. A `practical, non technical' probability that incriminating evidence is involved is all that is required. * * *." (Citations omitted.)
Texas v. Brown, 460 U.S. 730 at 763, 103 S.Ct. 1535 at 1543, 75 L.Ed.2d 502 (1983).
Based on the information received and on the officers' own observations, they had probable cause to stop the vehicle. Further, because the suspects were traveling in the vehicle at the time they were arrested, sufficient exigency was present to justify an immediate search of the vehicle to prevent the discarding or destruction of any contraband.
Accordingly, we conclude the district court correctly denied the defendant's motion to suppress.
Defendant also assigned as error any errors patent on the face of the record. The only patent error is that the sentence imposed does not give credit for time served, as required by LSA-C.Cr.P. art. 880. Because this does not entail judicial discretion, we will not remand the matter for resentencing but will merely order the district court to correct the error. State v. Fraser, 484 So.2d 122 (La.1986).
For the foregoing reasons, the district court is ordered to correct the record to reflect that defendant is to be given credit against her sentence for time served.
CORRECTION OF SENTENCE ORDERED AND, AS CORRECTED, AFFIRMED.