IN THE SUPREME COURT OF MISSISSIPPI
NO. 92-CA-01197-SCT

*ROBERT T. BROOKS*

*v.*

*JANE GUNTER BROOKS*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/92 |
| TRIAL JUDGE: | HON. RAY HILLMAN MONTGOMERY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM R. COLLINS |
| ATTORNEYS FOR APPELLEE: | BARRY W. GILMER, LESLIE R. BROWN, |
| | CHARLES L. DUNN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 3/30/95 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/20/95 |

**CONSOLIDATED WITH**

**NO. 96-CA-00261-SCT**

*JANE GUNTER BROOKS*

*v.*

*ROBERT T. BROOKS*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/96 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BARRY W. GILMER |
| ATTORNEYS FOR APPELLEE: | WILLIAM R. COLLINS |
| | PATRICK MALONE RAND |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 9/25/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

This is the second appearance of this case before this Court. In the first case, Jane Gunter Brooks was awarded a divorce from her husband, Robert T. Brooks, on the grounds of adultery, and received equitable distribution, alimony, and fees. Mr. Brooks appealed and this Court reversed and remanded for reconsideration on the issues of the equitable distribution, allocation of fees, and the award of alimony, but found that the evidence was sufficient to grant the divorce on the grounds of adultery. *Brooks v. Brooks*, 652 So. 2d 1113 (Miss. 1995). On remand, the lower court again divided the property and awarded fees. Aggrieved by the decision, Mrs. Brooks appeals to this Court, raising four issues for our consideration.

> **I. WHETHER THE CHANCELLOR ERRED IN AWARDING MRS. BROOKS A SUM OF MONEY IN THE FORM OF PERIODIC ALIMONY WHICH IS INSUFFICIENT TO MAINTAIN HER IN THE LIFESTYLE TO WHICH SHE BECAME ACCUSTOMED, TAKING INTO CONSIDERATION THE INCOME, EARNING CAPACITY, AND NECESSARY EXPENSES OF MR. BROOKS?**

> **II. WHETHER THE TRIAL COURT ERRED IN EQUITABLY DIVIDING THE MARITAL ASSETS.**

> **III. WHETHER THE AWARD OF LUMP SUM ALIMONY IN THE FORM OF USED FURNISHINGS, A 1981 PICK UP TRUCK AND A 1987 JAGUAR AUTOMOBILE THAT WAS AN INTER VIVOS GIFT IS SO INADEQUATE AS TO SHOCK THE CONSCIENCE OF THE COURT**

> **IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD MRS. BROOKS ALL OF HER LITIGATION EXPENSES**

Mr. Brooks cross-appeals on the issue of the award of attorney's fees, contending that Mrs. Brooks is not entitled to any fees.

**FACTS**

The facts surrounding the marriage and divorce of Jane and Robert Brooks are fully recounted in this Court's decision in *Brooks v. Brooks*, 652 So. 2d 1113 (Miss. 1995). In the interests of economy they will not be repeated here, but suffice it to say that in that case this Court reversed the chancellor's equitable division of the Brooks' property as an abuse of discretion and reversed the award of attorney's fees.

On remand for redetermination of these issues, the chancellor concluded that the marital domicile and both of Mr. Brooks' businesses were properly subject to equitable distribution. The chancellor ordered the marital home sold and ordered that the parties should divide the proceeds equally. Until

this time Mr. Brooks had been paying the entire $1,400 mortgage payment while Mrs. Brooks retained the home. The chancellor ordered him to continue to make payments of $500 per month towards the mortgage debt until the property was sold or nine months elapsed. The chancellor provided that Mrs. Brooks could retain the marital domicile by offsetting the value of her half interest against one of the debts owed to her by Mr. Brooks.

The chancellor awarded Mrs. Brooks the cash value of one-half of Mr. Brooks' interest in Kolb's Grand Cleaners, a sum of $89,500. The chancellor also awarded Mrs. Brooks the cash value of one-half of Mr. Brooks' interest in Brooks Engineering, $24,180.

The chancellor concluded that Mrs. Brooks was due lump sum alimony, and awarded Mrs. Brooks all the possessions in the house, a 1987 Jaguar, and a 1981 pickup truck as lump sum alimony. The chancellor left Mr. Brooks in possession of his 1991 Cadillac Allante and Cadillac Fleetwood, which Mrs. Brooks values at $20,000 and $18,000 respectively.

The chancellor also determined that Mrs. Brooks was due periodic alimony and awarded her $2,200 per month. He also ordered Mr. Brooks to maintain a $100,000 life insurance policy for the benefit of Mrs. Brooks. Finally, the chancellor determined that Mrs. Brooks was unable to pay the bulk of her attorney's fees and awarded her $27,000 in fees, but left her to pay the roughly $15,000 in remaining fees herself.

## STANDARD OF REVIEW

It is the often-stated and well-settled rule that, in the sphere of domestic relations, this Court's standard of review is narrowly limited to ascertaining whether the court below abused its discretion or committed an error of law. *Johnson v. Johnson*, 650 So. 2d 1281 (Miss. 1994). This general standard has been specifically applied to each discrete area of domestic law raised by Mrs. Brooks on appeal as well: in equitable distribution -- *Ferguson v. Ferguson*, 639 So. 2d 921, 930 (Miss. 1994); periodic and lump sum alimony -- *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993); and, finally, in awards of attorney's fees -- *Martin v. Martin*, 566 So. 2d 704, 707 (Miss. 1990). If, however, the chancellor has made an error of law, this Court will accord his decision no deference and will not hesitate to reverse. The scope of this Court's review is limited to ascertaining whether the chancellor adequately supported his findings, applied the correct legal standard, and did not arrive at a result that is so manifestly unreasonable that it demonstrates an abuse of discretion.

## DISCUSSION

Division of marital property incident to divorce in Mississippi is accomplished by two distinct but related legal methods, alimony and equitable distribution. "'Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede.'" *Ferguson*, 639 So. 2d at 929, quoting *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d at 334 (Neely, J., concurring). The touchstone of distribution is equity, and the ultimate question is whether the division, as a whole, is equitable. As this Court has stated to these same litigants in their first appearance before this Court, "In order to achieve equitable and fair results incident to a divorce, awards of alimony and any division of property should be considered together by a chancellor." *Brooks*, 652 So. 2d at 1124. With this guiding principle in mind, and in light of the stringent standard of review, the assigned errors will be

addressed.

## ISSUES I, II, AND III

## IS THE DIVISION OF PROPERTY EFFECTED BY THE CHANCELLOR IN THE FORM OF ALIMONY AND EQUITABLE DIVISION BASED ON AN ERROR OF LAW OR SO INADEQUATE AS TO DEMONSTRATE AN ABUSE OF DISCRETION?

### A. The Periodic Alimony

The chancellor below relied upon this Court's discussion in ***Brooks v. Brooks***, 652 So. 2d 1113 (Miss. 1995), and awarded Mrs. Brooks $2,200 per month in periodic alimony. He also ordered Mr. Brooks to maintain a $100,000 life insurance policy on himself with Mrs. Brooks as the named beneficiary at a cost of $220 per month.

Mrs. Brooks contends that $2,200 per month is an inadequate award, and that her necessary expenses are $5,172.50 per month.[1] Mrs. Brooks cites this Court's decision in ***Heigle v. Heigle***, 654 So. 2d 895 (Miss. 1995), and ***Tutor v. Tutor***, 494 So. 2d 362 (Miss. 1986), for the proposition that she is entitled to an amount which will maintain her in the lifestyle to which she has become accustomed. While this is generally true, Mrs. Brooks ignores the second part of the equation, which dictates that the chancellor consider "not only the reasonable needs of the wife but also the right of the husband 'to lead as normal a life as reasonably possible with a decent standard of living.'" ***Massey v. Massey***, 475 So. 2d 802, 803 (Miss. 1985), *quoting* ***Hopton v. Hopton***, 342 So. 2d 1298, 1300 (Miss. 1977), *quoting* ***Nichols v. Nichols***, 254 So. 2d 726, 727 (Miss. 1971). It is apparent that equity demands a weighing of "not only the benefit to the wife but the resultant burden to the husband." ***Nichols v. Nichols***, 254 So. 2d at 727, *quoting* ***Aldridge v. Aldridge***, 27 So. 2d 884 (Miss. 1946). The chancellor correctly weighed these two interests, specifically relying on the factors outlined by this Court in ***Nichols*** in arriving at the award. The chancellor thus applied the correct legal standard in determining the alimony award.

Furthermore, upon examination of the facts, the amount of the award is not so inequitable on its face that it evidences an abuse of discretion. Accepting Mrs. Brooks' estimation, Mr. Brooks' net take-home pay is approximately $3,900 per month. This puts the chancellor's award of $2,200 per month at over half Mr. Brooks' net take-home pay. The chancellor was well within his discretion to decide that approximately half of Mr. Brooks' take-home pay should be retained by him to accord a "decent standard of living."

### B. The Lump Sum Alimony Award

Mrs. Brooks also challenges the general sufficiency of the lump sum alimony award. The chancellor in this case carefully examined the factors stated by this Court in ***Cheatham v. Cheatham***, 537 So. 2d 850 (Miss. 1985). Applying these factors, the chancellor determined that Mrs. Brooks was entitled to all the possessions currently in the house, the pickup truck, and the 1987 Jaguar as lump sum alimony. Neither the possessions in the house nor the Jaguar were officially valued, although the record indicates that the purchase price of the 1987 Jaguar was approximately $45,000. The record also shows that Mr. Brooks valued the contents of the house at $175,000, although this valuation is sharply disputed by Mrs. Brooks, who maintains that she received nothing but a "house full of used

furniture."

While Mr. Brooks' testimony may be discounted as essentially self serving, Mrs. Brooks' characterization of her award as "used furniture" strains credulity. The marital home of the parties is located on several acres of land in Madison County. It is a 3,800 square foot structure, with a pool, pool house, and barn. It is obvious that the accouterments of such a house amount to substantially more than "a house full of used furniture", as the testimony of Elaine Oxendine indicates:

Q. They own a lot of jewelry, don't they?

A. Yes. She does. Well, I guess he does, too. But they do. Jewelry. Cars. I mean, just, you know, big trips.

Q. You've been in their home --

A. Yes.

Q. -- on more than one occasion?

A. Oh, yes.

Q. They have quite a bit of crystal and --

A. Yes.

Q. -- china and --

A. Yes.

Q. -- silver, don't they?

A. Beautiful things. Beautiful things.

Q. The home is decorated --

A. Beautiful.

Q. -- nicely?

A. Uh-huh (AFFIRMATIVE).

The chancellor did not abuse his discretion in considering the award of all the possessions within this house as an adequate lump sum award.

Mrs. Brooks also contends that the chancellor erred by including the 1987 Jaguar in the distribution as lump sum alimony because it was an inter-vivos gift from Mr. Brooks. Mrs. Brooks contends that, because it was a gift, the Jaguar should not have been counted as part of her property division, and that therefore she is entitled to a larger amount of lump sum alimony equal to the value of the Jaguar.

While it is certainly true that gifts to one spouse from a third party are not considered "marital property", as factor number four of the *Ferguson* factors makes clear, this is not the case for

interspousal gifts. *Ferguson* relied on *LaRue v. LaRue*, for its interspousal gift analysis. *LaRue v. LaRue*, 304 S.E.2d 312 (W. Va. 1983). In that case the West Virginia court held that interspousal gifts result in a setoff against the *receiving* spouse:

> In an appropriate case, the court is permitted to take the value of such gift into account in determining the wife's equitable distribution claim.
>
> . . .
>
> [W]here a court determines that an award of equitable distribution is appropriate, it could consider the value of gifts made to the spouse seeking contribution by the other spouse.

*LaRue v. LaRue*, 304 S.E.2d at 321, 326 (W. Va. 1983). In other words, a gift from one spouse to another may properly be considered part of the "joint" estate. This underscores the fundamental difference between gifts to one spouse from a third party or acquired by inheritance, which are more like property owned prior to the marriage, and gifts between the spouses, which are often the product of the joint efforts of the spouses, and are regularly considered to be part of the joint marital estate.

As this Court has stated, "interspousal gifts are not a part of this factual situation." *Ferguson*, 639 So. 2d at 929. Undoubtedly, certain highly personal gifts remain part of the separate estates of the spouses. However, as was noted throughout the *LaRue* opinion, married couples do not acquire property in anticipation of divorce; gifts between the spouses are often a product of expediency which benefits both spouses, and hence they are part of the marital estate.

The gift of the Jaguar in the instant case inured to the benefit of both Mr. and Mrs. Brooks during their marriage, and was not such a highly personal gift as to be considered part of Mrs. Brooks' separate estate. The chancellor was well within his discretion to include the interspousal gift of the Jaguar as part of the joint property subject to division.

## C. The Equitable Division of Property

Mrs. Brooks also contends that the chancellor erroneously divided the marital property under the factors set forth by this Court in *Ferguson*. Mrs. Brooks first argues that under *Ferguson* her award of half of the two businesses and the marital domicile is inadequate. The bulk of Mrs. Brooks' argument is essentially a re-argument of each *Ferguson* factor.

The application of *Ferguson*, however, is for the chancellor. The chancellor supported his conclusions thoroughly and applied the correct legal standard as enunciated by this Court. The chancellor laboriously set out the *Ferguson* factors, and made specific findings on each one throughout the five pages of discussion on equitable distribution, ultimately deciding to award half to each party. This is not an abuse of discretion, but the very exercise of discretion which is desired and expected of chancellors. This Court reviews the chancellor's decision for *manifest* error, and "[i]t is not the province of this Court to substitute its opinion for that of the factfinder." *Gambrell v. Gambrell*, 644 So. 2d 435, 442 (Miss. 1994), *quoting Hammett v. Woods*, 602 So. 2d 825, 830 (Miss.1992).

Buried within the argument that the chancellor's award was simply unfair in general, Mrs. Brooks also contends that the valuation of Kolb's was erroneous, because the chancellor did not use Mrs.

Brooks' valuation but opted to have an independent appraisal conducted. This is farcical. In this case the valuation of Kolb's was a "sticking point" between the parties, and each party submitted varying appraisals. After discussing the differences in the parties' valuations, the chancellor very reasonably chose to accept the independent valuation. Such a decision is supported by Mississippi law. *Ferguson* explicitly encouraged chancellors to use expert valuation. *Ferguson*, 639 So. 2d at 929. Furthermore, this Court has recognized that the chancellor may in his discretion eschew expert valuation. *See Sandlin v. Sandlin*, 690 So. 2d 1154, 1160 (Miss. 1997). It follows that he may require it as well.

Finally, Mrs. Brooks contends that the chancellor did not, in fact, equitably divide the property by awarding Mrs. Brooks the cash equivalents of her interests in Kolb's Cleaners and Brooks Engineering. Mrs. Brooks contends that the better solution would have been to give her the stock, and fashion a protective order protecting her minority interest, or that the value should have been established by judicial sale. Certainly these would have been alternatives, but so is awarding the cash value based on an expert appraisal. The chancellor in this case was faced with the difficult task of dividing the assets of two closely-held businesses between former spouses who are seriously at odds with one another. The chancellor heard argument on both sides of this issue and chose to award a cash settlement. The chancellor was well within his discretion to do so.

## ISSUE IV

### WAS THE AWARD OF ATTORNEY'S FEES AN ABUSE OF THE CHANCELLOR'S DISCRETION?

As stated previously, the award of attorney's fees is generally committed to the discretion of the chancellor. This Court, however, has established a substantive check on the discretion of the chancellor by requiring a showing, on the record, that a party is unable to pay attorney's fees. *Creekmore v. Creekmore*, 651 So. 2d 513, 520 (Miss. 1995); *Brooks v. Brooks*, 652 So. 2d 1113, 1120 (Miss. 1995); *Martin v. Martin*, 566 So. 2d 704, 707 (Miss. 1990); *Benson v. Benson*, 608 So. 2d 709, 712 (Miss. 1992). Furthermore, the attorney's fees must be shown to be reasonable under the factors outlined by this Court:

> The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

Turning to the instant case, it is apparent that the chancellor had at his disposal voluminous evidence from which to determine the relative abilities of the parties to pay their attorney's fees, and the reasonableness of those fees. The chancellor specifically noted that "to require Jane to pay for all of the legal expenses that she has incurred . . . would seriously undercut any financial security she will have from the division of the marital assets. In short, the Court finds that Jane is not able to pay for all of her legal fees." The chancellor also had the benefit of the evidentiary hearing on January 22, 1996, in which Mrs. Brooks put on testimony to prove the reasonableness of the fees.

Considering that evidence of both the ability to pay and the reasonableness of the fees was before the chancellor, and that the chancellor made specific findings based on that evidence, it is the opinion of this Court that the chancellor acted within his discretion in choosing to award Mrs. Brooks $27,000 in attorney's fees, but leaving Mrs. Brooks to pay $15,000 of her total fees.

## CONCLUSION

The chancellor's award to Mrs. Brooks in this case is neither grossly inadequate nor exceedingly generous, and when that is the case, this Court will overturn the discretion of the chancellor only upon a showing that he has committed an error of law. ***Johnson v. Johnson***, 650 So. 2d 1281, 1285 (Miss. 1994). In the instant case the chancellor issued a cogent, well-written order detailing the numerous factors which he used in arriving at the division of property in this case. Appellant failed to point out any errors of law or clearly erroneous factual holding. Accordingly, this case is hereby affirmed.

**AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. While reserving comment on the reasonableness of these expenses, it does not escape this Court's notice that the amount of Mrs. Brooks necessary expenses exceed the gross take home pay of Mr. Brooks prior to the divorce.