441 So.2d 1195 (1983)
STATE of Louisiana
v.
Clifton BELTON, Jr.
Nos. 82-KA-2061, 82-KA-2120.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied January 6, 1984.
*1197 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Kay Bates, Asst. Dist. Attys., for plaintiff-appellee.
Paula Cobb, Baton Rouge, for defendant-appellant.
MARCUS, Justice.
Clifton Belton, Jr. was charged by bill of information with possession of phenmetrazine (preludin) in violation of La.R.S. 40:967(C). After trial by jury, he was found guilty as charged. The state then filed an information accusing defendant of being an habitual offender under La.R.S. 15:529.1 (Habitual Offender Law). After a hearing, the trial judge found defendant to be a second felony offender and sentenced him to serve five years at hard labor. Defendant took separate appeals from his conviction (No. 82-KA-2061) in which he asserts two assignments of error and from his sentence (No. 82-KA-2120) in which he asserts one assignment of error.

ASSIGNMENTS OF ERROR NOS. 1 AND 2 (NO. 82-KA-2061)
Defendant contends the trial judge erred in denying his motions to suppress physical evidence seized prior to his arrest and physical evidence and an inculpatory statement obtained after his arrest.
Evidence adduced at the suppression hearing reveals that at about 10:00 p.m. on November 12, 1981, Officers Joseph Booth and Jay Thompson of the Louisiana State Police and Officer Royce Thompson of the Baton Rouge City Police Department were on a routine patrol in an unmarked police car. The officers, who were dressed in plain clothes, were on an "armed robbery patrol" and were looking for suspects for whom outstanding warrants had been issued. As they approached the Bradley Road Cafe, the officers saw defendant and several other persons standing outside of the bar. Officer Booth described defendant's stance as the same one that he normally exhibits when he is "holding narcotics." When asked to explain how one normally looks when one is in possession of narcotics, Officer Booth stated: "Standing around like you have nothing to do, not talking to anybody, with your hands in your pocket[s]."
According to Officer Booth, the bar was "renowned in this area for being a place where people stand outside on the sidewalk and sell narcotics." Similarly, Officer Jay Thompson described it as a "known ... hangout for drug dealers and armed robber[s] and the like." The officers also testified that they were familiar with defendant and knew that he dealt narcotics because they had previously taken drugs from him. Defendant admitted that he also knew these officers. He then described an encounter with these officers at the Bradley Road Cafe about a week before his arrest. According to defendant, he had just gotten out of jail and was standing in front of the bar talking to friends when the officers *1198 approached. He stated that when confronted with some pills that the officers had found in the vicinity of the bar, he admitted that they were his. The officers then told him that the next time they see him standing in front of the bar, they will arrest him.
Being suspicious of both defendant and the Bradley Road Cafe, the officers stopped at the bar to look around. Defendant immediately became nervous when he saw them drive into the parking lot and then suddenly turned around and ran into the bar as the officers were getting out of their patrol car. Upon seeing defendant flee, the officers ran after him, identified themselves as police officers, called defendant by name, and ordered him to stop. When asked by the trial judge what precipitated this action, Officer Booth responded, "Mr. Belton recognized us and ... [h]e drawed up straight and looked like he got nervous and then he turned around and immediately made for the door as we exited the vehicle and ordered him to halt." Officer Booth further testified that it was "more than likely" that he had his weapon drawn as he ran into the bar. Defendant did not mention seeing the officer's weapon.
The officers were only about five to eight steps behind defendant by the time they entered the bar. Once inside, the officers scanned the premises, spotted defendant standing near the end of the bar and then immediately approached him. He was ordered to stand up against a wall and was "patted ... down for weapons." Officer Jay Thompson looked around the area where defendant was originally standing when they entered the bar and spotted a rolled up portion of a brown paper bag on the floor. According to Officer Thompson, this is "the common way on Bradley Road of concealing drugs." Therefore, he picked it up and discovered that it contained fifteen tablets. Both Officers Booth and Thompson recognized them as preludin. Officer Thompson testified that a barmaid told Officer Booth that she saw defendant drop the drugs when he ran in the bar.
Defendant was arrested and transported to the city police armed robbery office where, after being advised of his rights, he signed a waiver of rights form. Thereafter, he orally admitted that the preludin tablets were his. In searching him prior to booking, Officer Thompson found another preludin tablet in defendant's shirt pocket. Later chemical analysis confirmed that all sixteen tablets were preludin. It is conceded that the arrest and all searches and seizures were conducted without a warrant.
The fourth amendment to the federal constitution and art. 1, § 5 of the Louisiana constitution protects people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.Code Crim.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389 (La.1983); State v. Chopin, 372 So.2d 1222 (La.1979). We have held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, supra; State v. Chopin, supra.
The totality of the circumstances, "the whole picture," must be considered in determining whether reasonable cause exists. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, State v. Chopin, supra; State v. Truss, 317 So.2d 177 (La.1975), this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause, State v. Williams, 421 So.2d 874 (La.1982); State v. Wade, 390 So.2d 1309 (La.1980).
The purpose of the fourth amendment, however, is not to eliminate all contact *1199 between the police and the citizenry. Police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with or approach a citizen. As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person's liberty or privacy which would require some particularized and objective justification under the fourth amendment. United States v. Mendenhall, 446 U.S. 544,100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Williams, supra; State v. Lanier, 391 So.2d 1152 (La.1980).
When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. If, however, property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the "right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Andrishok, supra; State v. Chopin, supra; State v. Ryan, 358 So.2d 1274 (La.1978).
In the instant case, the crucial inquiry is whether, at the time defendant disposed of the preludin tablets, the police officers had effected an actual or imminent unlawful detention. When the officers drove up to the Bradley Road Cafe and saw defendant standing out front, they had a right to stop the patrol car, get out, look around, and converse with him. No detention or attempted detention of defendant in fact occurred. It is arguable that if the police officers had detained him at this moment, the stop would have been without reasonable cause. The only facts and circumstances known by them were the following: defendant previously had had narcotics taken from him; he was standing as if he were presently holding narcotics; and, the particular location, the Bradley Road Cafe, was a notorious narcotics outlet. But, just as the officers arrived, defendant recognized them and ran inside the bar. At this point, the officers had reasonable cause to believe that defendant was engaged in criminal conduct. Flight from the approaching officers, coupled with the other facts and circumstances known by the officers, was sufficiently suspicious to justify an investigatory stop based on reasonable cause to believe defendant had committed, was committing, or was about to commit a crime. Therefore, it was not an unlawful intrusion on defendant's right to be free from governmental interference when the officers ran after him and ordered him to stop. This was a permissible attempted investigatory detention. Since the narcotics that were intentionally dropped by defendant as he ran into the bar were abandoned prior to any unlawful police conduct, they were lawfully seized. Once in lawful possession of the preludin tablets, the police had probable cause to arrest him. Accordingly, the confession and the single tablet of preludin seized after his lawful arrest were properly obtained. Hence, the trial judge correctly denied defendant's motions to suppress.
Assignments of Error Nos. 1 and 2 are without merit.

ASSIGNMENT OF ERROR NO. 1 (NO. 82-KA-2120)
Defendant contends the trial judge erred in finding him to be a second felony offender. He argues the state failed to prove that his guilty plea to simple burglary (prior conviction) was properly Boykinized. Defendant further contends the trial judge improperly received additional evidence on this issue after the state had rested its case. He argues that this conduct was contrary to La.Code Crim.P. art. 765(5)[1] and "borders, if not actually is, double jeopardy."
*1200 The record reflects that at the enhancement proceeding on May 21, 1982, the state presented the testimony of defendant's probation officer and a certified copy of the minutes from the 1979 case in which defendant pleaded guilty to a charge of simple burglary. After the state rested, defendant objected to the sufficiency of this evidence on the ground that the minutes did not reflect that he had been advised of and then waived his rights as per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The trial judge agreed, ordered a transcript made of the earlier guilty plea colloquy, and then took the matter under advisement. On May 25, 1982, after reviewing the transcript and finding that defendant was properly Boykinized, the trial judge found him to be a second felony offender.
A proceeding pursuant to the habitual offender law is not a prosecution for a separate criminal charge. It is to enhance the penalty for the subsequent offense; it only involves the sentencing for that crime. State v. Walker, 416 So.2d 534 (La.1982); State v. Scott, 395 So.2d 714 (La.1981). Hence, the trial judge's actions in the instant case in taking the matter under advisement and then considering additional evidence four days later is not contrary to La.Code Crim.P. art. 765(5). This article specifies the normal order of trial and is inapplicable to sentencing procedure. Similarly, the consideration of additional evidence in the sentencing phase of the instant case does not constitute double jeopardy. State v. Stott, supra; State v. Langendorfer, 389 So.2d 1271 (La.1980).
Accordingly, Assignment of Error No. 1 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DENNIS, J., concurs.
DIXON, C.J., dissents with reasons.
CALOGERO, J., dissents. The police did not have authority to stop defendant under C.Cr.P. art. 215.1, or otherwise.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Here the majority relies on C.Cr.P. 215.1 to permit the police to corner the defendant on a wall of a bar until they can find, somewhere on the floor of the bar, contraband. Police were chasing defendant, a few steps behind him, calling his name, but did not see him throw anything down.
C.Cr.P. 215.1 says a policeman may stop a person whom he "reasonably believes" to be about the commission of an offense. The opinion says the police may stop one whom they "reasonably suspect." It is not a quibble to note that "to suspect" is not "to believe."
Defendant obviously wished to avoid a confrontation with the police, as is his right. (The police had threatened to arrest him the next time they saw him at the bar). But in the exercise of his "right to be let alone," the opinion jumps to the conclusion that the police were given reasonable cause to believe defendant was engaged in criminal conduct. The explanation is puzzling: "Flight ... coupled with the other facts and circumstances known by the officers, was sufficiently suspicious to justify an investigatory stop based on reasonable cause to believe defendant had committed, was committing, or was about to commit a crime."
The police in this case did not have reasonable or probable cause to believe defendant was engaged in criminal activity until after he was against the wall, and after the barmaid told them she had seen the defendant throw down the contraband.
Until that point, the police had simply arrested defendant, as they had threatened the week before, and were looking for a reason to take him in.
NOTES
[1] La.Code Crim.P. art. 765(5) provides:

The normal order of trial shall be as follows:
....
(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument;....