633 So.2d 768 (1994)
STATE of Louisiana
v.
Jeffrey HARTZHEIM.
No. 93-KA-631.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 1994.
*769 A. Bruce Netterville, O'Neill, Netterville & Burton, Gretna, for defendant/appellant Jeffrey Hartzheim.
John M. Mamoulides, Dist. Atty., Leigh Anne Wall, Asst. Dist. Atty., Craig Gibbs, Asst. Dist. Atty., Gretna, for appellee State of LA.
Before GAUDIN and CANNELLA, JJ., and JOHN C. BOUTALL, J. Pro Tem.
CANNELLA, Judge.
Defendant, Jeffrey Hartzheim, appeals his conviction pursuant to his guilty plea for violation of La.R.S. 40:966 A, possession with intent to distribute marijuana. The guilty plea was entered following denial of defendant's motion to suppress the evidence.[1] He was sentenced to five years at hard labor. The sentence was suspended and defendant was placed on probation for two years, subject to special conditions, that he pay a $300 fine, a $20 per month probation fee and various court costs, that he forfeit his driving privileges for ninety days and that he submit to drug testing when ordered to do so.
*770 We reverse the denial of the motion to suppress and vacate and set aside the conviction and sentence.
At the suppression hearing, a copy of the police report was filed into the record as a joint stipulation in lieu of live testimony. The following excerpt of facts is taken from the police report:
On July 28, 1992, Agt. Clifford J. Bruno of the Jefferson Parish Sheriff's Office Narcotics Division, reports receiving an anonymous telephone call at approximately 8:30 p.m. from a concerned citizen who wished to remain anonymous. The unidentified caller stated to Sgt. Bruno that they know of a subject known to the caller as Jeffrey Hartzheim, a white male, who resides at 3609 Adolph St., located in Jefferson, La., who is distributing large amounts of marijuana in the Jefferson Parish Area. The caller further stated to Agt. Bruno that Hartzheim drives a large blue pick up truck with cab that is usually parked in the driveway of the Adolph St. residence. The caller continued to give Sgt. Bruno information further stating that at the present time Hartzheim is in possession of a large quantity of marijuana. The caller ended the conversation with Agt. Bruno by giving Agt. Bruno a description of Hartzheim as follows: White male, approximately 30 years of age, blond/brown hair, wears glasses, approximately 6'0 tall weighing approximately 190 lbs. At this time the conversation with the anonymous caller was terminated.
At approximately 9:00 p.m., Agt. Bruno along with Agt. Richard Bridges departed the narcotics office enroute to 3609 Adolph St., Hartzheim's residence, to set up a surveillance. At approximately 9:30 p.m. agents arrived at the defendant's residence and set up a visual surveillance. It should be noted that upon arrival agents observed a large blue pick up truck with a king cab parked in the driveway in front of the residence bearing municipal numbers 3609 as described by the anonymous caller bearing LA license plate numbers S022334. Agt. Bruno checked the license plate through NCIC and learned that the vehicle was registered to a Jeffery Hartzheim.
At approximately 9:38 p.m., Agents observed a white male subject fitting the description given to Agt. Bruno by the anonymous caller exit 3609 and enter into the blue pick up truck and depart. Agents maintained surveillance by following the subject at which time it was decided to stop the subject.
Agents stopped the vehicle at the intersection of Central Ave. and Jefferson Hwy. The driver of the vehicle was identified as Jeffrey Hartzheim. As agents were speaking to Hartzheim, Agt. Bruno detected a strong pungent odor known to Agt. Bruno as marijuana through past investigations conducted by Agt. Bruno protruding from the open drivers door of Hartzheim's vehicle. Agt. Bruno looked through the open door and observed a partially smoked hand rolled cigarette in the open ashtray of the vehicle. Agt. Bruno retrieved the cigarette and found it to contain a green vegetable substance which Agt. Bruno field tested the substance showing positive for the presence of marijuana. At this time Agt. Bruno advised Hartzheim of his rights as per Miranda.
Mr. Hartzheim stated to agents that he understood his rights and wished to cooperate with Agt. Bruno. At this point Agt. Bruno advised Hartzheim of the information which Agt. Bruno had received from the anonymous caller in reference to Hartzheim's residence. At this time Hartzheim admitted to Agt. Bruno and Bridges that he, Hartzheim, had marijuana inside his residence located at 3609 Adolph St. Agt. Bridges asked Hartzheim if he, Hartzheim, would give a consent to search to Agents for the 3609 residence at which time Hartzheim agreed.
At this point Agt. Bridges completed a rights of arrestee form and read its contents to Hartzheim and then allowed Hartzheim to read the same contents. Hartzheim signed the rights form understanding his rights as per Miranda but did not wish to sign the waiver of rights section in case he decided to call an attorney. Agt. Bridges further completed a consent to search form for Hartzheim's residence, 3609 Adolph St., and read its contents *771 including rights as per Miranda to Hartzheim and then allowed Hartzheim to read over the same form at which time Hartzheim agreed and signed the said form. At approximately 10:00 p.m., Agents along with other assisting members of the narcotics division arrived at 3609 Adolph St., with Hartzheim and was allowed entry into the residence by Hartzheim. At this point a systematic search of the residence was conducted where the following contraband was located and seized ...
As a result of the search, approximately 4.5 pounds of marijuana was seized.
On appeal defendant asserts that the trial court erred when it denied defendant's Motion to Suppress the Evidence, Confession and Identification and in finding that the Jefferson Parish Sheriff's Office had reasonable suspicion to stop and arrest him.
Defendant contends that the officers did not have probable cause to stop him merely on the basis of an informant's tip as to the location of his residence and vehicle without any evidence or corroboration of unlawful activity by defendant.
The state, citing State v. Jernigan, 377 So.2d 1222 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), on the other hand, contends that the detailed information provided by the anonymous informant, coupled with the agents' corroboration of that information provided reasonable cause for an investigatory stop.
The United States and Louisiana Constitutions prohibit unreasonable searches and seizures. U.S. Const. Amend. 4; La. Const. Art. I., Sect. 5. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Reasonable cause for an investigatory stop is something less than probable cause. Belton at 1198; State v. Chirlow, 617 So.2d 1, 4 (La.App. 5th Cir.1992). Reasonable cause must be determined under the facts of each case after considering the totality of the circumstances. Belton at 1198; Chirlow at 4. This determination is made by analyzing whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. Belton at 1198; Chirlow at 4.
LSA-C.Cr.P. art. 215.1 reads as follows:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
Thus, the right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. Belton at 1198; Chirlow at 4.
It has been recognized that an informant's tip can provide a police officer with reasonable cause to detain and question a suspect. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Jernigan at 1225; Chirlow at 4. This includes an anonymous tip, provided the tip carries enough indicia of reliability to justify the stop. Jernigan at 1225; Chirlow at 4. Indicia of reliability includes specificity of information and corroboration by independent police work. Jernigan at 1225; Chirlow at 4. Also, where the information, if correct, presents *772 an immediate and real danger to the public, prompt police action is justified to prevent possible serious harm. Jernigan at 1225.
In State v. Lee, 485 So.2d 555 (La.App. 5th Cir.1986) cited by defendant, several Jefferson Parish police officers were patrolling in three separate units when they received a radio broadcast stating that an anonymous 911 complainant had reported that two black males were attempting to sell a half-case of marijuana. The tipster provided the vehicle license number, said it was a black car, and reported it was located at the corner of Ames and Barataria Boulevard. The officers immediately proceeded to that location and surrounded a car which was black, bore the license number, and was occupied by two black males and one black female. After detaining the car, the deputies asked the suspects to exit their vehicle, which they did immediately and without incident. All the three occupants were questioned and the two males were directed to the rear of the sheriff's unit. No altercations or exigent circumstances appeared in the wake of the confrontation. Nevertheless, one of the officers went over to the suspect's car, looked inside, and removed a backgammon case containing marijuana. The two males were subsequently arrested. This court found that reasonable cause for the stop "probably" did not exist, stating:
"After a careful review of the record in its entirety and bearing in mind our statutory and jurisprudential guidelines, it appears that reasonable cause to stop probably did not exist at the time of the deputies' grand swoop. Neither an identified caller nor any police corroboration exists to buttress the scant facts anonymously supplied. Casually allowing police officials to stop and search someone on the basis of any telephone call wherein the caller makes an accusation (anonymously) and supplies a few innocent details is dangerous to individual liberty, inviting of manipulation of police power by anonymous callers, and wholly open to abuse by the police themselves."
Lee at p. 558.
In contrast to the Lee case, this court in Chirlow, concluded that the state proved the reasonableness of the initial stop of defendant's vehicle which was based on an informant's tip. In Chirlow, police officers were contacted by a confidential informer who stated that a subject by the name of Kevin Chirlow and an unknown black male were in an older model grey Pontiac Firebird. The informer further stated that they were in the Mary Poppins area selling cocaine. Several officers and other members of the street crimes unit went immediately to the area. As the officers were turning left onto North Mary Poppins, an area known for drug trafficking, they observed an older model grey Firebird. At this time the officers stopped the suspect's vehicle and ordered the driver and passenger to exit. The officers then performed a routine weapons check of both subjects, as well as the immediate area of the vehicle where the driver and passenger were located.
After the subjects were secured, the officers learned that the driver of the suspect vehicle was Kevin Chirlow and the passenger was Joseph Parks. In discussing the reasonableness of the initial stop, the court stated:
"... Here, the reasonableness of the initial stop must be determined in light of the information that the officers received from a "confidential informer." While the person giving the information was referred to in the police report as a "confidential informer" the report does not specify whether this informant had ever given information in the past that had proven reliable. It did not indicate if the officers knew the individual. Nor did it indicate the reliability of the information. Nevertheless certain portions of the information were confirmed by police observation, that is, the color, model and location of the vehicle. After the stop, other information was confirmed, two men in the car and one was named Kevin Chirlow. However, upon observing the vehicle, the report does not indicate that the officers observed any illegal activity or even any suspicious activity. Rather, they stopped the vehicle based on the tip and the officers' knowledge that this was an area known for drug dealings. Thus, considering the totality of the circumstances, *773 it appears that the reasonableness of this initial stop has been proven by the state. See: State v. Lee, supra."
State v. Chirlow, at pp. 4-5.[2] (Emphasis added)
In this case, the officers were able to verify the tipster's information, but the information was scanty and there was no indication the area was a known drug location, as was the case in Chirlow. Additionally, the information which the officers possessed presented no immediate and real danger to the public justifying prompt police action to prevent possible serious harm, as was the case in Jernigan. The informant here was not known to the officers and thus, the reliability of the tip was absent. The defendant neither sped away from his home, nor attempted to flee when pulled over by the officers. There was no reasonable suspicion that defendant was committing, had committed, or was about to commit a crime. Thus, considering the totality of the circumstances, the reasonableness of the stop of defendant has not been proven by the state. We find, therefore, that the trial judge committed reversible error in denying the motion to suppress the evidence and the conviction and sentence must be set aside. See: State v. Lee, 485 So.2d 555 (La.App. 5th Cir.1986).
Accordingly, the denial of the motion to suppress the evidence is reversed and the conviction and sentence of the defendant are hereby vacated and set aside. The case is remanded for further proceedings.
REVERSED, VACATED AND SET ASIDE AND REMANDED.
GAUDIN, J., dissents.
NOTES
[1] Defendant entered his plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal the denial of his motion to suppress.
[2] Even though the initial stop was found to be reasonable, the court, in Chirlow, concluded that the defendant's arrest was illegal because it was made without probable cause and therefore, the seizure was likewise illegal.