668 So.2d 1299 (1996)
STATE of Louisiana
v.
Kenneth MISKEL.
No. 95-KA-584.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 1996.
*1300 John M. Mamoulides, District Attorney, Alison Wallis, Assistant District Attorney, Parish of Jefferson, Gretna, for Plaintiff/Appellee.
Bruce G. Whittaker, 24th Judicial District, Indigent Defender Board, Gretna, for Defendant/Appellant.
Before GAUDIN, GRISBAUM and GOTHARD, JJ.
GOTHARD, Judge.
On January 4, 1995, the defendant, Kenneth Miskel, was charged with possession of *1301 cocaine, a violation of La.R.S. 40:967 C. At his arraignment on February 23, 1995, the defendant entered a plea of not guilty. On May 2, 1995, the trial court denied the defendant's motion to suppress evidence. The defendant then withdrew his former plea of not guilty and entered a plea of guilty as charged while reserving his right to appeal the denial of his motion to suppress evidence in accordance with State v. Crosby, 338 So.2d 584 (La.1976). Thereafter, the trial court sentenced the defendant to two years at hard labor, suspended the sentence, and placed the defendant on two years active probation. For the following reasons, we affirm the trial court's denial of the motion to suppress and amend the defendant's sentence to give him credit for time served prior to the imposition of the sentence.

FACTS
The only evidence presented to the trial court in regards to the motion to suppress was the police report detailing the defendant's arrest. The report sets forth the following facts:
On December 12, 1994, police officers were dispatched to Airline Highway and Shrewsbury in response to a tip from an unknown complainant regarding a possible drug violation. The complainant described a black male suspect who weighed around 250 pounds, was wearing dark sweat pants, and was standing near a dumpster. Upon arriving at the location, the officers observed the defendant, who fit the tipster's description and was standing next to a dumpster.
The officers approached the defendant and asked him to identify himself and to remove his hands from his pockets. The officers then conducted a pat down search for weapons but did not find any. Next, the officers asked the defendant to empty his pockets. In response, the defendant removed a chap stick container from his right front pocket. The officers heard a clicking sound coming from the container as the defendant handed it over. Upon examining the container, the officers discovered three rocks of crack cocaine. The defendant was then placed under arrest.

ASSIGNMENTS OF ERROR
The defendant assigns the following errors: (1) the trial court erred in denying the motion to suppress; and (2) any and all errors patent on the face of the record.

DISCUSSION
The defendant argues that the trial court should have excluded the cocaine from evidence because it was discovered as the result of an illegal search. According to the defendant, the officers' request that he empty his pockets constituted a search; furthermore, this search was illegal because it was performed incident to an arrest that lacked probable cause.
We disagree with the defendant's characterization of the discovery of the cocaine. La.C.Cr.P. art. 201 defines an arrest as the "taking of one person into custody by another." The distinguishing characteristic of an arrest is the "actual restraint" of the person being arrested. Id. Here, the record reveals that there was no actual restraint of the defendant until the officers discovered the cocaine. Therefore, the initial encounter between the police and the defendant involved an investigatory stop, not an arrest. During this stop the police asked the defendant to empty his pockets. The defendant consented and handed over the chap stick container. Upon discovering the cocaine, the police then arrested the defendant. Thus, it is apparent that the police discovered the cocaine as a result of the defendant consensually emptying his pockets during an investigatory stop, rather than as a result of a search incident to an arrest. However, there remains a question as to whether the police were justified in the first instance in conducting the investigatory stop.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the right of a police officer to stop and interrogate a person based upon the officer's reasonable suspicion that the person has been, is, or is about to be engaged in criminal conduct. The principle of the "Terry" stop has been codified by our legislature in La.C.Cr.P. art. 215.1, which provides in pertinent part:

*1302 A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Reasonable suspicion for an investigatory stop is something less than probable cause. State v. Belton, 441 So.2d 1195 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Chirlow, 617 So.2d 1, 4 (La.App. 5th Cir.1992), writ denied, 620 So.2d 874 (La.1993). Reasonable suspicion must be determined under the facts of each case after considering the totality of the circumstances. Id. This determination is made by analyzing whether the officer had sufficient knowledge of articulable facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Hartzheim, 93-631 (La.App. 5th Cir. 2/23/94), 633 So.2d 768, 771.
We have previously noted that the "reputation of an area is an articulable fact upon which the police officer may rely and is relevant in the determination of whether there is reasonable cause to conduct an investigatory stop." State v. Carver, 531 So.2d 551, 553 n. 2 (La.App. 5th Cir.1988). This is because "high crime areas are places in which the character of the area gives color to conduct which might not otherwise arouse the suspicion of an officer." State v. Burnett, 513 So.2d 391, 393 (La.App. 4th Cir.1987).
Further, an informant's tip can provide a police officer with reasonable cause to detain and question a suspect. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Jernigan, 377 So.2d 1222, 1224 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980). Even an anonymous tip can provide the basis for an investigatory stop, provided that the tip carries "enough indicia of reliability, such as specificity of the information and corroboration by independent police work, to justify the stop." State v. Jernigan, supra, at 1225.
In State v. Chirlow, supra, we held that an investigatory stop based on information given by a confidential informant was valid. 617 So.2d at 4-5. As in the instant case, in Chirlow the motion to suppress was submitted on the police report of the incident. The report did not indicate that the informant had given information in the past that had been proven to be reliable. However, certain portions of the information were confirmed by police observation. For example, the information given by the informant regarding the color, model, and location of the defendant's vehicle was corroborated by subsequent police work. Also, the identity of one of the defendants named by the informant was confirmed by the police. Another significant factor in our determination that reasonable suspicion for an investigatory stop existed was that the defendants were in an area known for drug dealing. Id. at 5. Thus, based on the totality of the circumstances, we concluded that the investigatory stop was reasonable.[1]Id.
Conversely, in State v. Hartzheim, supra, we held that there was no reasonable suspicion for an investigatory stop where an anonymous tipster's information was "scanty" and there was no indication that the area was a known drug location. 633 So.2d at 773. In Hartzheim, the informant provided the police with the name, physical description, and address of a reputed drug dealer, as well as a description of his vehicle. Id. at 770. In response to this information, the police set up a surveillance of the suspect's home. Shortly thereafter, the police observed a person matching the suspect's description exit the residence and get into a truck which also matched the description given by the informant. The police checked the license plate number of the truck and confirmed that it was registered to the person named by the informant. The officers followed the truck for a short time and then pulled it over. Upon approaching the truck, the officers noticed a marijuana cigarette in the ash tray. Therefore, the suspect was arrested. Id.
*1303 After being advised of his rights, the suspect consented to a search of his home during which the police discovered a large amount of marijuana. However, based on the totality of the circumstances, we felt that reasonable suspicion for the initial investigatory stop had been lacking. Id. at 773. In particular, we noted that the area where the incident occurred was not a known drug location. Thus, we reversed the denial of the motion to suppress and set aside the defendant's conviction. Id.
In the instant case, we find that there was sufficient reasonable suspicion to support the investigatory stop of the defendant. As in Chirlow, supra, the information given by the informant, namely the physical description of the suspect and his location, was confirmed by subsequent police work. Without more, however, reasonable suspicion in this case would be lacking, as is evidenced by our decision in Hartzheim.
The crucial fact here is that the challenged encounter took place in a high crime area. The police report indicates that the investigatory stop occurred at Airline Highway and Shrewsbury. In two recent cases we have noted that this location is a high crime area. For example, in State v. Vinet, 576 So.2d 1200 (La.App. 5th Cir.1991), we referred to the northern part of the Shrewsbury subdivision as "Coke Alley", an area known for drugs. Similarly, in State v. Wheelwright, 615 So.2d 385, 386 (La.App. 5th Cir.), writ denied, 619 So.2d 576 (La.1993), we recognized that the area on Mistletoe Street which runs parallel to Airline Highway is a high crime area.
Ordinarily, we would be limited in our review to the police report because the trial court decided the motion to suppress solely on the basis of that document. See State v. Chirlow, supra, at 4. This report makes no mention of the fact that the area where the investigatory stop occurred is a high crime area. However, based on our previous descriptions of this area in the cases cited above, we feel compelled to take judicial notice of the fact that the investigatory stop occurred in a high crime area.[2] This fact, coupled with the information provided by the tipster which was corroborated by the police, convinces us that the officers had sufficient reasonable suspicion to make an investigatory stop of the defendant.
Further, we find that it was reasonable for the officers to open the chap stick container after hearing the clicking sound coming from it. In State v. Solomon, the Third Circuit held that it was reasonable for the police to open a matchbox because it might have contained a small weapon. 93-1199 (La.App. 3d Cir. 3/2/94), 634 So.2d 1330. Similarly, in this case the clicking sound could have indicated the presence of a weapon, such as a razor blade, in the container. Thus, the officers acted reasonably when they opened the container and discovered the cocaine. Based on the foregoing, we hold that the trial court did not err in denying the defendant's motion to suppress.
Finally, we have performed an error patent review of the record. For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
Our review of the record reveals a discrepancy between the transcript and the commitment. The transcript, unlike the commitment, fails to show that the trial court gave the defendant credit for time served. La. C.Cr.P. art. 880 provides that the "court, when it imposes sentence, shall give a defendant credit toward service of his sentence for *1304 time spent in actual custody prior to the imposition of sentence." As the language of article 880 is mandatory, the defendant must be given credit for time served, despite the fact that it is not specifically provided for in the transcript.
Of course, the failure to give the defendant credit for time served is of no import now because his sentence was suspended and he was placed on probation. See State v. Williams, 593 So.2d 753, 759 (La.App. 5th Cir.1992). However, out of an abundance of caution, we will amend the sentence imposed and give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of his sentence.
There is an additional step required in an error patent review in a case where the defendant has entered a plea of guilty. In such a case, a court should also determine whether the defendant was properly "Boykinized" as part of the error patent review. State v. Godejohn, 425 So.2d 750 (La.1983); State v. Napier, 94-717 (La.App. 5th Cir. 2/15/95), 652 So.2d 27. The process of "Boykinization" is designed to ensure that a defendant who pleads guilty is aware that by doing so he is waiving three federal constitutional rights: the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The Louisiana Supreme Court adopted the Boykin standard in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (La.1971) and held it to apply to all felony pleas of guilty entered subsequent to December 8, 1971. State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (La.1972).
In the instant case, the record reveals that the trial judge conducted a colloquy with the defendant before accepting his guilty plea. The judge explained to the defendant the nature of the offense and the maximum penalty which could be imposed. The judge advised the defendant of his privilege against self-incrimination and of his rights to a trial by jury and to confront his accusers. The judge further advised the defendant that by pleading guilty he was waiving those rights. The judge then informed the defendant of the actual sentence which would be imposed upon acceptance of his plea and determined that the defendant was entering the plea of his own volition. Additionally, a waiver form signed by the defendant, his attorney, and the judge indicates that the defendant voluntarily waived his constitutional rights by pleading guilty. Based on the foregoing, we find that the defendant was properly "Boykinized".
In summary, the trial court's judgment denying the defendant's motion to suppress is affirmed. In accordance with La.C.Cr.P. art. 880, the sentence imposed is hereby amended to give the defendant credit for time served in actual custody prior to the imposition of the sentence.
AMENDED and AFFIRMED.
NOTES
[1] However, we went on to hold that the motion to suppress should have been granted because the search conducted by the police was illegal due to a lack of probable cause to arrest the defendants. Thus, we vacated the defendants' convictions. State v. Chirlow, supra, at 5.
[2] La.C.E. art. 201 allows a court to take judicial notice of any fact that is not subject to reasonable dispute. A court may take judicial notice of a fact "at any stage of the proceeding", even on appeal. La.C.E. art. 201(F). In State v. Sterling, 479 So.2d 641, 643 (La.App. 1st Cir.1985), writ denied, 482 So.2d 626 (La.1986), the First Circuit took judicial notice of the fact that a particular area was notorious as a drug trafficking location.