783 So.2d 514 (2001)
STATE of Louisiana
v.
Natasha L. MORGAN.
No. 00-KA-1501.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2001.
*516 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Thomas S. Block, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Defendant/Appellant.
Panel composed of Judges GOTHARD, McMANUS, and SCHOTT, Pro Tempore.
SOL GOTHARD, Judge.
The defendant, Natasha Morgan, pled guilty to one count of possession of methamphetamine in violation of R.S. 40:967(C), reserving her right to appeal under State v. Crosby, 338 So.2d 584, 588-590 (La. 1976). The trial judge sentenced the defendant to one year at hard labor, suspended, and placed the defendant on active probation for one year under the provisions of La.C.Cr.P. art. 893, with special conditions. In this appeal, defendant seeks review of the trial court's ruling on the motion to suppress.
The following facts were developed from testimony at the suppression hearing. The State presented testimony from Agent Corey Wilson of the Jefferson Parish Sheriffs Office, the arresting officer. The defendant testified on her own behalf.
In the early morning hours of July 17, 1999, narcotics agents from the Jefferson Parish Sheriffs Office, including Agent Corey Wilson, were investigating citizen complaints of narcotics sales, as well as a series of drug overdoses, in the Metairie area. As a result of their investigation, the agents made several arrests at Escapades Lounge in Fat City at about 3:30 a.m. on that date. Arrests were made both inside the club and in the club's parking lot.
According to Agent Wilson, one of the male subjects that he arrested that night told him that there were two white girls still inside the club selling drugs. The arrestee, who was not previously known to Agent Wilson, told Agent Wilson that the two girls had been near the door to the ladies' restroom all night dealing drugs. Agent Wilson testified that the arrestee did describe the women's clothing but that he could not recall that description and he didn't include that in his police report.
Agent Wilson testified that he and other uniformed police officers went into the club to corroborate the arrestee's information. He saw two white women standing "right by the bathroom door" who became very nervous when they saw the police. He stated that he and other deputies watched the two women for "a few minutes" before approaching them and he stated that the two women "all of a sudden started dancing when [the police] walked in" in an attempt "to blend in with the club" and "throw us off by looking different." He stated that the behavior was different because the two women were dancing in an area of the club that was "a *517 good ways away" from the dancing area. Agent Wilson testified that he did not witness either of the two women engaging in criminal behavior while they were under surveillance in the club.
When Agent Wilson and the other officers walked up to the two women to ask to speak with them, the women "became nervous, started crying and they started walking towards the door." Agent Wilson testified that he asked them to talk outside because the music was very loud inside the club. He and other deputies followed the ladies outside.
Agent Wilson testified that he told the two women that they were under investigation for narcotics sales before they went outside. Once outside, one of the women the defendantstarted crying and saying that she did not want to go to jail. He stated that he advised the two women of their Miranda rights even though he had not arrested either of them at that point. He further testified that the two women were free to leave at that point although he did not communicate that to them. Agent Wilson did not search the women but he did call for a female deputy to conduct a search on the women. He did not conduct a weapons pat-down for his safety because "the clothing she had on that night we know she didn't have a weapon nowhere on her."
Agent Wilson then asked the defendant if she was dealing narcotics, and she answered affirmatively and handed him a small, clear plastic bag of off-white powder that she had been concealing in the waistband of her clothing. Agent Wilson fieldtested the substance, confirmed that the powder was methamphetamine, and then arrested the defendant for possession of methamphetamine.
The defendant testified at the suppression hearing that she was at Escapades Lounge with another woman on July 17, 1999. She said that she was on her way to the bathroom, when a white man, not Agent Wilson, approached her. She admitted that she knew that the man who approached her was a police officer because he had a jacket with letters, possibly "S.I.D.," on it. She testified that the man asked for her identification because he said that she looked too young to be in a nightclub. After she showed the man her identification, he told her and her friend to step outside. She stated that she left the club at his command because "you have to listen to [the police]."
She testified that she and her friend left the club and stood by a police car. She did not remember which officer was talking to her but an officer asked if she was carrying any narcotics. The officer then asked her for her cigarette pack, which she gave to him. Further, she voluntarily emptied her pockets.
She testified that the police then asked her and her friend to wait in an unmarked police car. The young women were not handcuffed while they were in the police car. She stated that, while they were in the car, Agent Wilson told them that a female deputy was on her way to pick them up to take them to be searched. He stated that they should turn over any drugs which they were holding or they would be in trouble. At that point, she gave Agent Wilson the "crystal meth" that she was holding. The defendant also testified that Agent Wilson told her that if she went back into the club and bought more drugs as a police agent that he would dispose of the drugs which she had surrendered and forget about the charge against her. She refused.
After the testimony was presented, the trial judge denied the defendant's motion to suppress and stated the following:

*518 The evidence indicates that during the course of the investigation the officers received information respecting two white females by the bathroom door. They observed this lady at the door, asked her to come outside, which she did. The officer testified that she became very nervous and crying, that he advised her of her rights and that she then reached into her waistband and produced the plastic bag.
The discrepancy is with the defendant's version of exactly how it happened outside, but I don't think it's fatal even with that version. The officer acted on information, he didn't arrest the defendant based on what was told to him by the individual outside. The individual, whether he was a reliable informant or just an anonymous citizen giving information, the officer acted on it, and this defendant gave up the amphetamines or methamphetamines which she was carrying. Accordingly, the motion to suppress is denied.
In this appeal, the defendant argues that the anonymous tip by the arrestee to Agent Wilson, as corroborated by the police, was not sufficient to produce the reasonable suspicion of criminal activity necessary to justify the investigatory detention of the defendant. In her brief, the defendant, relying on the United States Supreme Court's recent decision in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), contends that the "anonymous" tip that the police officer received could not support reasonable suspicion because the officer did not provide a basis for the informant's knowledge, the tip did not provide a specific description of the alleged drug dealers, and the police failed to corroborate the tip to determine its trustworthiness. The defendant also implies that she "submitted to police authority" when she left the nightclub, which constituted an unconstitutional seizure of her person. The State, in contrast, argues that Agent Wilson's stop of the defendant was justified based on the arrestee's tip and the subject's nervousness when she saw the police.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993)). However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1,[1] as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal activity. State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1302. Reasonable suspicion for an investigatory stop is something less than probable cause *519 and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Charles, 95-498 (La. App. 5 Cir. 12/13/95), 666 So.2d 1147, 1149.
In evaluating whether an officer had the requisite reasonable suspicion for a Terry stop, a "reviewing court must take into account the `totality of the circumstances whole picture,' giving deference to the inferences and deductions of a trained police officer `that might well elude an untrained person.'" State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049. Further, the Court directed that the reviewing court must also weigh the circumstances known to the police "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.
The reputation of an area as a high crime area is an articulable fact upon which police officers may rely in determining whether there is reasonable suspicion to conduct an investigatory stop. State v. Ayche, 98-191 (La.App. 5 Cir. 7/28/98), 717 So.2d 1218, 1222, writ denied, 98-2853 (La.2/26/99), 738 So.2d 1061; State v. Miskel, supra at 1302. High crime areas are places in which the nature of the area "gives color to conduct which might not otherwise arouse the suspicion of an officer." State v. Miskel, supra at 1302. In addition, an officer's experience and knowledge of recent criminal patterns and an area's frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
An anonymous tip, corroborated by police surveillance, can supply enough reliability to support an investigatory stop. Alabama v. White, 496 U.S. 325, 333, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, the anonymous tip must provide a basis for reasonable suspicion, for instance, "sufficiently particular information concerning defendant's future actions." State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1270. A non-predictive anonymous tip, paired with either independent police corroboration of the readilyobservable facts or police observation of unusual or suspicious conduct, can provide the police with reasonable suspicion to temporarily detain the suspect. Id. at 1270 1271. "If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v.. White, 496 U.S. at 330, 110 S.Ct. at 2416; State v. Rodriguez, 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17.
An unconstitutional seizure occurs when the police, without reasonable suspicion, either actually stop an individual or create a situation wherein an actual stop of the individual is imminent. State v. Tucker, 626 So.2d 707, 712 (La.1993). But a person's constitutional right to be left alone is only violated when that person is actually stopped without reasonable suspicion or when a stop without reasonable suspicion is imminent, thus rendering any resulting seizure of abandoned property unlawful. State v. Short, 95-742 (La.App. 5 Cir. 1/30/96), 668 So.2d 1240, 1245 (citing State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984)).
In this case, at the suppression hearing, Agent Wilson testified that he has been an agent with the Narcotics Division of the Jefferson Parish Sheriff's Office for ten years and that he has made "well over 500" narcotics-related arrests in that time. Moreover, he indicated that he had been *520 involved in undercover drug purchases as well as drug arrests in that particular area. In fact, he testified that he was involved in several other drug arrests at the club where the defendant was arrested on July 17, 1999. He stated that the area was characterized as a "high crime" and "high narcotics" area of the city.
Further, he testified that, during the course of the evening, he arrested an individual who stated that two white girls had been standing by the ladies' restroom door in the club dealing narcotics all night. It is noted that Agent Wilson referred to that arrestee as a "reliable confidential informant" in the police report of the defendant's arrest. But, at the suppression hearing, when he was questioned about the informant's reliability, Agent Wilson testified that he had never previously arrested or dealt with that individual. Agent Wilson indicated that he felt that the arrestee became reliable once he was arrested and that the information was viable because the arrestee was a "citizen making a complaint."
Based on the information that he received from the arrestee, Agent Wilson and other deputies went into the club to corroborate the arrestee's information. Wilson testified that the arrestee "most likely" described the women, including their clothing, but Wilson could not recall the description and he did not include it in his arrest report. He did testify that he and other deputies went back into the club and observed two women "standing right by the bathroom door." He testified that the women became very nervous when the deputies looked at them.
Officer Wilson testified that, when he approached the defendant to speak to her, she "became nervous, started crying and started walking towards the door" of the nightclub. Officer Wilson then followed the defendant out of the nightclub in order to talk to her. At that time, under the totality of the circumstances given the facts known to Officer Wilson that night, he did have reasonable suspicion to conduct a Terry stop on the defendant that night.
We note that the decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73. We find that the record supports the trial court's denial of the defendant's motion to suppress.
We have reviewed the record for errors patent, according to La. C .Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) and find none.
For the above discussed reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED
NOTES
[1] LSA-C.Cr.P. art. 215.1 provides in pertinent part:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.