J^CLARENCE E. McMANUS, Judge.
Defendant appealed his conviction and sentence resulting from a guilty plea pursuant to State v. Crosby, 338 So.2d 584(La.1976).
*1059 For the following reasons, we reverse the denial of the motion to suppress and vacate the conviction and sentence.

FACTS

Officer Nathan Getts and Sergeant Stephen Imbragulio, narcotics detectives with the New Orleans Police Department, testified that, on May 31, 2002 they were members of a take down unit conducting surveillance at 806 Darensburg Street in New Orleans. Other investigating officers witnessed narcotics transactions from the residence and were in the process of obtaining a search warrant or gathering enough information to obtain a search warrant for the residence. That day, a surveillance officer observed a blue pickup truck approach the front of the residence. A passenger, later identified as defendant, exited the truck and entered the residence briefly and returned to the pickup truck. That information was relayed to Officer Getts and Sergeant Imbragulio by surveillance officers.
Subsequently, Detective Harry Stovall, driving an unmarked vehicle, followed the truck in response to the information given to him by the surveillance | .¡officer. Officer Getts and Sergeant Imbragulio, driving an enforcement vehicle, also followed, positioning themselves in order to conduct a take down investigatory stop of the truck. Officer Getts opined that reasonable suspicion for the stop existed because the ongoing narcotics investigation led them to believe defendant had just engaged in a narcotics transaction and that he could potentially compromise the investigation by making a phone call to the residence under surveillance. Office Getts and Sergeant Imbragulio, while in Orleans Parish, activated their vehicle’s lights and siren in order to stop the truck. The truck failed to initially stop and continued until it finally stopped in Jefferson Parish.
Sergeant Imbragulio approached the driver’s side of the truck and Officer Getts approached the passenger side. As Officer Getts approached, he observed defendant making furtive movements toward his waistband and bending downward. Officer Getts, concerned by the situation, instructed defendant to exit the vehicle. Likewise, Sergeant Imbragulio instructed the driver to exit the vehicle. As defendant was exiting the vehicle, two pieces of wrapped aluminum foil, which Officer Getts recognized as the packaging of street level heroin, fell to the ground. The contents of the aluminum foil subsequently tested positive for heroin.
Officer Getts instructed defendant to place his hands on the vehicle. Meanwhile, Sergeant Imbragulio placed the driver under arrest after having observed two tinfoil packets inside the vehicle on the floor board. As Officer Getts was securing defendant against the car, defendant looked over his left shoulder and told Officer Getts, “Look out behind you.” Officer Getts observed defendant move his hand to his waistband and, believing defendant was attempting to retrieve a' weapon, wrestled defendant to the ground. As defendant hit the ground, a Walther PPK semi-automatic weapon fell to the ground. Officer Getts then handcuffed defendant.
|4Sergeant Imbragulio subsequently notified the Jefferson Parish authorities. Officer Brandon Boylan of the Jefferson Parish Sheriffs Office, responded to the call. Officer Boylan then took defendant and the driver into custody and transported them to the Jefferson Parish Correctional Center. Officer Boylan got a statement from the defendant after obtaining a waiver of his constitutional rights.
On June 19, 2002, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, David Washington, with one count of possession *1060 of a controlled dangerous substance, to wit: heroin, in violation of La. Rs. 40:966(C) and one count of possession of a firearm by a convicted felon in violation of La. Rs. 14:95.1. On June 20, 2002, defendant was arraigned on the charges and entered a plea of not guilty.
On June 28, 2002, defendant filed various pretrial motions including a Motion to Suppress Confession, Identification, and Physical Evidence. A hearing on defendant’s motion to suppress was held on January 21, 2003 and February 4, 2003. The motion was denied. On February 20, 2003, he plead guilty to both counts of the indictment.
In accordance with his plea agreement, defendant was sentenced to ten years of imprisonment at hard labor on count one, possession of heroin, and ten years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on count two, possession of a firearm by a convicted felon. The sentences were ordered to be served concurrently with one another and concurrently “with the sentence resulting from any parole revocation which occurred while [defendant was] awaiting trial in this matter.” Thereafter, defendant filed a timely motion to appeal the trial court’s ruling on the pretrial motions pursuant to State v. Crosby, 338 So.2d 584 (La.1976). This appeal followed.

\ ¿DISCUSSION

Defendant argues the trial court erred in denying his motion to suppress because his actions of entering and exiting a residence under surveillance for drug activity, without more, did not provide officers with reasonable suspicion necessary to conduct an investigatory stop of the vehicle. The State responds that the police officers had reasonable suspicion to stop defendant because defendant exhibited suspicious behavior when-he entered a residence which was under surveillance for drug activity.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1 and federal and state jurisprudence. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Hicks, 98-1231 (La.App. 5 Cir. 3/30/99), 733 So.2d 652.
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the facts of each case by determining whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. State v. Belton, supra; State v. Rosales, 537 So.2d 850 (La.App. 5 Cir. 1989); State v. Hicks, 733 So.2d at 655. The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances “giving deference to the inferences and deductions of a trained police officer.” State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101. This determination is | (jmade by analyzing whether the officer had sufficient knowledge of articulable facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Hartzheim, 93-631 (La.App. 5 Cir. 2/23/94), 633 So.2d 768.
*1061 In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). An officer’s experience, his knowledge of recent criminal patterns and his knowledge of an area’s frequent incidence of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138-139, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159.
. In support of his position, defendant cites State v. Hartzheim, supra. In Hart-zheim, a United States Drug Enforcement Administration Agent received information from a confidential informant that a particular residence was involved in wholesale distribution and storage of heroin and that a large quantity of heroin was to be delivered by one of the residents on a particular day. Thereafter, surveillance of the residence was established. Two individuals exited the residence and entered a parked vehicle and drove away. Investigating officers followed and, after approximately five blocks, stopped the vehicle, Upon stopping, the driver of the vehicle fled on foot and the passenger was observed throwing a black plastic bag out of the window. The bag was later determined to contain two bags of heroin.
On appeal, this Court found that the police officers did not have reasonable suspicion to make an investigatory stop. The Hartzheim court noted that the information given by the confidential informant was so sparse that it was |7impossible to determine the veracity, basis of knowledge and reliability of the informant and the information given. Additionally, this Court noted the predictive aspect of the information was vague and the officers had not observed defendant acting in a suspicious or unusual manner.
Another case supporting defendant’s argument is State v. Sneed, 95-2326 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371. In Sneed, police officers received information from an untested confidential informant that wholesale heroin distribution was taking place at a certain residence. The police set up surveillance of the house that same day. Officers then observed the defendant stop his car and briefly enter the home before exiting and driving away from the house. Defendant was stopped by police and a subsequent search of the vehicle resulted in the seizure of nineteen -packets of heroin from under the seat. The Fourth Circuit held that police officers did not have reasonable suspicion to stop a defendant after he briefly visited a residence that was under surveillance for drug activity.
■ The - Fourth Circuit, in finding that police officers did not have reasonable suspicion to stop defendant’s vehicle, noted that the court had previously ruled that an individual’s mere presence at a residence about to be searched pursuant to a warrant does not establish “reasonable suspicion” under article 215.1 of the Code of Criminal Procedure. The court further reasoned that there was- no testimony that the area had a reputation for drug trafficking or that there had been a succession of brief visits to the house by other individuals. _ .
Conversely, in State v. Fontaine, 01-1291 (La.App. 4 Cir. 3/6/02), 814 So.2d 592, writ denied, 02-1114 (La.11/15/02), 829 So.2d 425, and State v. Smith-Holmes, 01-1810 (La.App. 4 Cir. 3/27/02), 815 So.2d 351, the defendants were observed behaving suspiciously and briefly entering and exiting a location that was under surveil *1062 lance for drug activity. In both cases, officers conducting the |ssurveillance and observing the defendants’ behavior, radioed fellow officers and gave them a description of the defendants. Police officers then performed investigatory stops which ultimately led to the discovery of illegal narcotics.
In those cases, the Fourth Circuit found that, based on the totality of the circumstances, the officers had reasonable suspicion to stop the defendants. The court reasoned that defendants were seen coming and going from a location police knew to be a place of drug activity. The court also noted the defendants’ actions were similar to the actions of those persons who had previously been stopped and found to have drugs in their possession.
In Hartzheim and Sneed investigating officers based their stop solely on information received from a confidential informant without having that information verified by independent investigation. In this case, Officer Getts testified that investigating officers conducting surveillance witnessed prior narcotics transactions take place at the residence located at 806 Darensburg. In Fontaine and Smith-Holmes, the defendants were seen briefly entering and exiting the house which was known by police to be a place of drug activity, leading investigating officers to believe a drug transaction had taken place.
However, a defendant’s mere presence at a residence about to be searched pursuant to a warrant or near a high crime area, without more, does not provide the police with reasonable suspicion based upon articulable facts to make an investigatory stop. See, State v. Hill, 01-1372 (La.App. 5 Cir. 5/15/02), 821 So.2d 79, 84 and State v. Williams, 95-1971 (La.App. 4 Cir. 11/16/95), 665 So.2d 112. Unlike Fon-taine and Holmes-Smith, where the defendant’s actions, of briefly entering and exiting the residence under surveillance, fit the actions of others who had been found to have drugs or drug paraphernalia on them when stopped during the same surveillance period, there was no similar evidence introduced in the instant case. Further, neither Officer Getts nor Sergeant Imbragulio testified that |flthe officers conducting surveillance of the residence noticed defendant acting suspiciously or unusually aside from briefly entering and exiting the residence under surveillance for drug activity.
A review of the transcript reveals that very limited information was presented at the suppression hearing. Officer Getts testified that he was not part of the surveillance team, rather, his assignment was to stop any vehicles suspected of purchasing narcotics from the residence under surveillance. Officer Getts testified that the stop was made after the surveillance officer observed the truck stop in front of the residence, observed the passenger go into the residence, return a short time later, get back into the truck, and leave. At that point, another officer followed the truck based on the information that the surveillance officer believed that “the occupant inside that truck did take part in a narcotics transaction from that residence.” Later in his testimony, Officer Getts reiterated that the stop was made based on the surveillance officer’s observations. When Sergeant Imbragulio was questioned regarding the stop, he admitted that he had not observed any illegal transactions involving the defendant. We find that the State did not present evidence to show that Officer Getts and Sergeant Imbragu-lio had information sufficient to give them reasonable suspicion to stop the truck. The officers conducting the surveillance were not identified, nor were any details given to support the alleged narcotic activity. General statements without any spe *1063 cific facts are insufficient to support reasonable suspicion of criminal activity. Therefore, we are unable to conclude that defendant’s entering a residence and exiting to a waiting vehicle, standing alone, was enough to provide officers with reasonable suspicion to stop defendant. Accordingly, the denial of the motion to suppress the evidence is reversed and the conviction and sentence of the defendant are hereby vacated.

REVERSED; CONVICTION AND SENTENCE VACATED