JjPITCHER, Judge.
The defendant, Samuel Nelson, III, was charged by bill of information with one count of possession with intent to distribute co *332 caine, a violation of LSA-R.S. 40:967(A)(1). He moved to suppress all items of physical evidence taken either from his person or from the area in close proximity to him at the time of his arrest. Additionally, he moved to suppress any and all statements and/or confessions which he had made. The trial court denied defendant’s motion. After a trial by jury, the defendant was found guilty as charged. He was sentenced to serve eight years, six months, at hard labor, with credit for time served, and to pay a $1,000.00 fine. The defendant now appeals, designating four assignments of error.
FACTS
The following facts were revealed at trial. On January 14, 1994, at approximately 5:25 p.m., Officer Patrick Babin, of the Houma Police Department, and Officer Steve Basco, of the Terrebonne Parish Sheriffs Office, were traveling on East Street in Mechanic-ville, a high profile drug area, in Terrebonne Parish. The officers were attempting to identify a suspect whom they had viewed on surveillance video. The officers saw the suspect, pulled their vehicle over, and approached him. The defendant, who was standing ten to fifteen feet away from the suspect, moved away towards a light pole. Officer Babin testified that the defendant attempted to block his view of him with the light pole, made a motion into his right pocket, and then made a pitching motion. Officer Basco testified that he saw the defendant slowly step back around the light pole, reach into his right pocket, pull out two plastic bags and throw them to the ground. Officer Basco recovered two cellophane bags, one containing what appeared to be marijuana and rolling papers, and the other containing what appeared to be crack cocaine, from the area where the defendant had made the pitching motion. Officer Babin searched the defendant and discovered ajjloaded nine millimeter handgun, an extra nine millimeter handgun magazine, $290.00 in cash, and cigarette rolling papers, similar to those recovered with the suspected marijuana. Officer Basco showed the two bags to the defendant and told him that he had seen him throw them, to which the defendant replied, “I know you saw me.” The defendant disputed the officers’ accounts of the incident, and, when asked by the State whether officer Basco had “framed” him, stated, “[Rjight.”
ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, the defendant contends that the district court erred in failing to suppress the evidence due to illegal search and seizure.
The Fourth Amendment to the United States Constitution and Article I, Section 5, of the Louisiana Constitution protect persons against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. See State v. Andrishok, 434 So.2d 389, 391 (La.1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Andrishok, 434 So.2d at 391. When law enforcement officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized. If, however, property is abandoned without any prior unlawful intrusion into a citizen’s right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy, and, thus, no violation of a person’s custodial rights. It is only when the citizen is actually stopped without reasonable cause or when such a stop is imminent that the “right to be left alone” is violated, | ^hereby rendering unlawful any resultant seizure of abandoned property. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. den., 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984) (citing State v. Andrishok, 434 So.2d 389, 391 (La.1983); State v. Chopin, 372 So.2d 1222, 1224 (La.1979); State v. Ryan, 358 So.2d 1274 (La.1978)).
An individual has not been “actually stopped” unless he submits to a police *333 show of authority or he is physically contacted by the police. State v. Tucker, 626 So.2d 707, 712 (La.1993) (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). In determining whether an “actual stop” of an individual is “imminent,” the focus must be on the degree of certainty that the individual will be “actually stopped” as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an “actual stop” of the individual is “imminent.” Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. State v. Tucker, 626 So.2d at 712-713.
At the time the defendant threw down the evidence, in the instant case, he had not been actually stopped. Thus, the issue is |5whether or not a stop was imminent.
The facts of this case do not suggest that a stop was imminent. This case is not one wherein law enforcement officers swung their patrol car into the defendant’s path, with lights flashing, stopping a few feet in front of him. See State v. Chopin, 372 So.2d 1222 (La.1979). Nor is this a ease where law enforcement officers “sprang” from their patrol car and “overtook” the defendant. See State v. Saia, 302 So.2d 869, 873 (La.1974), cert. den., 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). The defendant in the instant matter was at least ten to fifteen feet away from the officers at the outset of the encounter. He was not surrounded. There was no testimony indicating that the officers approached the defendant with weapons drawn, and he was approached on foot by the officers. The incident took place in close proximity to a trailer park with its attendant hiding places, and in extremely close proximity to the pole behind which the defendant sought to secret himself and his actions. Lastly, the fact that there were two officers involved did not substantially increase the certainty that the defendant would be actually stopped. All of these factors suggest that the force employed by the officers was far from virtually certain to result in the actual stop of the defendant. The officers, in the instant matter, had the right to move closer for a better view of what they considered suspicious activity — the defendant’s moving away from them when they approached and his attempting to secret himself behind a light pole in a high profile drug area. See State v. Ryan, 358 So.2d at 1276. Whether or not the officers intended eventually to stop the defendant is immaterial; no detention was imminent at the time he abandoned the evidence. Therefore, the evidence was legally seized, and the defendant’s motion to suppress was without merit and properly denied by the district court. This assignment of error is without merit.
I (ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error, the defendant contends that the district court erred in denying him a post-verdict judgment of acquittal. He argues that the verdict of the jury was contrary to the law and the evidence, which is actually a sufficiency of the evidence argument. State v. Howard, 634 So.2d 876, 879 (La.App. 1st Cir.1993), writ denied, 94-0055 (La. 4/7/94); 635 So.2d 1133.
Officer Patrick Babin was the first witness to testify for the State. Babin stated that on January 14, 1994,[2] at approximately 5:25 *334 p.m., he and agent Basco were in the East Street area, attempting to identify a suspect whom they had viewed on surveillance video earlier that day. Babin saw the suspect (Brian Jules), pointed him out to agent Bas-co, and pulled his vehicle over parallel to the curb. Babin and Basco approached Jules; and Babin noticed the defendant, ten to fifteen feet behind Jules, slowly backing away into a position behind a light pole that would have obscured Babin’s view of him. Babin took a position to the right of the light pole and to the defendant’s left, while Basco went in the opposite direction. Babin then described how the defendant “made a motion” into his right pocket with his right hand, “came out” of his right pocket, and “went out” towards his right in a pitching motion. Due to the light pole, Babin did not see whether anything left the defendant’s hand. Babin detained Jules and the defendant, while Basco walked over to the right of where the defendant had made his pitching motion. Babin saw Basco recover two cellophane bags, one containing what appeared to be marijuana and rolling papers, and the other containing what appeared to be crack cocaine. Babin identified State Exhibit No. 1 as a copy of a document listed under the case number assigned to the defendant’s arrest, N94023, depicting the items recovered. The State asked 17Babin whether, based upon his experience as a narcotics officer, he attributed any significance to the package containing twenty pieces of suspected “crack” cocaine. Babin replied that he found the amount and the depiction to be consistent with that of persons usually dealing in narcotics. Babin searched the defendant and discovered a loaded nine millimeter handgun, an extra nine millimeter handgun magazine, $290.00 in cash, and cigarette rolling papers, similar to those recovered with the suspected marijuana. Babin further stated that Basco showed the two bags to the defendant and told him they (Babin and Basco) had seen him throw them and that the defendant replied with words to the effect, “[Yjou’ve got it”, or “You’ve got me”. Babin pointed out the defendant in court as the person he had seen make the pitching motion.
The State later recalled Babin and had him identify various State exhibits. Babin identified State Exhibit No. 2, two plastic bags, as the bags used to contain the evidence retrieved by Basco, the bags which he turned over to the crime lab, and the same items of evidence recovered in connection with the arrest of the defendant. Babin identified State Exhibit No. 4 as the packs of “marijuana” rolling papers recovered during the arrest. Babin stated that one of the packs of papers was in the pocket of defendant and that the other was recovered by Basco from the ground with the other evidence. Babin also identified State Exhibit No. 5 as the nine millimeter handgun and extra “clip” that he had recovered from the defendant’s person. Babin also stated that the $290.00 in cash he had discussed was placed in a seizure account pursuant to the seizure laws of the State of Louisiana.
Thomas Chin, a drug analyst at the Louisiana State Police Crime Lab, testified and identified State Exhibit No. 3 as a manila envelope, containing the contents in Terre-bonne Parish Narcotics Case No. N94023, received by the Louisiana State Police Crime Lab on January 28, 1994, at 8:35 a.m. Chin stated that he tested one |gof the twenty white rock-like substances contained in one of the bags of State Exhibit No. 2 and that his tests revealed that the substance was “conclusive for cocaine.” He also tested the green vegetable matter contained in the other bag and found it to be marijuana.
Officer Steve Basco corroborated Babins’s testimony regarding the officers’ reason for being on East Street, the date, and the time of day. Additionally, Basco testified that he saw the defendant to the right and slightly behind the suspect, Jules, while Babin approached Jules from the right side of the light pole, and while he approached Jules from the left side of the light pole. Defendant was slowly stepping back around the light pole and appeared to focus his attention on Babin rather than him (Basco). Defendant then reached into his right front pant pocket with his right hand, pulled out a plastic bag (which looked like just one plastic bag at the time), and threw it to the ground. *335 Basco had viewed defendant’s actions, unob-structedly, from eight to ten feet away. Bas-co retrieved the bags that he saw defendant throw, from three to four feet away from where he had seen him, and found one bag to contain twenty pieces of suspected “crack” cocaine and the other to contain a small amount of marijuana and “Ez Wider” rolling papers. Basco then saw Babin retrieve a nine millimeter handgun, money and “Ez Wider” rolling papers from the defendant’s person.
The State asked Basco if, based upon his experience as a narcotics officer for seven years, he attributed any significance to the packaging of the bags. Basco replied that it was common practice for a street level narcotics dealer to place contraband for sale in a plastic bag because it was easier to retrieve for sales, easier to discard if the dealer came into contact with police, and easier to retrieve should the police not find it. Basco pointed out the defendant in court as the person he had witnessed and stated that he and Jules were the only two individuals in the vicinity at the time of the defendant’s | adetainment. Basco also stated that he commented to the defendant that he could not believe that the defendant had thrown down the bags in front of him because he saw the defendant do so, to which the defendant replied, “I know you saw me.”
The defendant took the stand and disputed the officers’ accounts of the incident. The defendant stated that at the time of the incident, he was on his way to his girlfriend’s house and was waiting for a friend to return with cigarettes that he had asked the friend to buy for him. As Babin approached Jules, Basco passed in front of him (the defendant) and walked around the pole. Babin called his whole name, BB Sammy Nelson, III, and told the defendant that they (Babin and Bas-co) had received a phone call, alleging that he was waiving a gun around. They asked to search him. The defendant refused to be searched; and, about five minutes later, Bas-co returned from around the pole stating, “Oh, yeah, we finally got you now, Mr. Nelson.” Basco told him that he (Basco) had argued with another officer about whether or not the defendant was involved with drug activity, accused him of having women sell drugs for him, and told him that he was going to “stick it” to him real hard every time he caught him. Then, Babin searched him and recovered a nine millimeter pistol “off’ his back. The defendant denied having any “Ez Wider” papers but agreed that he had $290.00 in cash in his front left pocket, which he alleged he had earned from performing odd jobs. The defendant explained the handgun on his person as “protection” and stated that he had purchased it two days earlier and had planned to go to a notary public on the day of the incident to have the gun “put” in his name. The defendant further explained that the two loaded “clips” came with the gun. The defendant denied ever walking behind the utility pole, denied taking anything out of his pocket, and denied throwing anything down.
Pursuant to LSA-C.Cr.P. art. 821, when reviewing a sufficiency of the evidence claim, an appellate court must determine whether lipthe- evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518.
Viewing all of the evidence both direct and circumstantial in the light most favorable to the state, any rational trier of fact could have concluded beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that the defendant possessed cocaine with the intent to distribute. This assignment of error is without merit.
*336 ASSIGNMENT OF ERROR NUMBER THREE
Through this assignment of error, the defendant contends that the district court erred in denying him a new trial because the cumulative effect of the errors urged on appeal warranted the granting of a new trial.
A thorough review of each assignment of error reveals no reversible error. Furthermore, the combined effect of the incidences complained of did not deprive the defendant of his right to a fair trial. There is neither cumulative prejudicial impact, nor is there denial of due process. See State v. Copeland, 530 So.2d 526, 544-545 (La.1988); State v. Graham, 422 So.2d 123, 137 (La.1982). This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FOUR
In this assignment of error, the defendant contends that the | ^district court imposed an excessive sentence which, under the circumstances, amounted to cruel, unusual and excessive punishment.
Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one’s sense of justice. State v. Reed, 409 So.2d 266, 267 (La.1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Under the version of the Louisiana Sentencing Guidelines applicable hereto, while the district court had to consider the guidelines, it had the complete discretion to reject the sentence recommended by those guidelines and impose any sentence not constitutionally excessive, and within the statutory sentencing range for the crime of which the defendant was convicted, so long as it stated for the record the considerations taken into account and the factual basis for the imposition of sentence. LSA-C.Cr.P. art. 894.1;[3] See State v. Smith, 93-0402 (La. 7/5/94); 639 So.2d 237, 240 (on rehearing); State v. Bennett, 623 So.2d 74 (La.App. 1st Cir.1993), writ denied, 93-2128 (La. 3/11/94); 634 So.2d 404.
In imposing sentence, the district court stated that it hadji^reviewed the nature of the crime involved, the defendant’s age, the defendant’s “rap” sheet, the fact that the defendant had a young child, and had considered the provisions of LSA-C.Cr.P. art. 894.1, the sentencing guidelines, and the sentencing range for the offense. The court cited the fact that the defendant was arrested in an area of known contraband transactions, carrying $290.00 in cash, a nine millimeter weapon, rolling papers, marijuana, and approximately twenty rocks of cocaine. The court noted the fact that the defendant’s actions clearly created a risk of death or great bodily harm. The court also noted that there was no direct testimony that the defendant had actually distributed the cocaine, and that the weapon had not been used in the commission of any offense, but was readily available.
Any person who violates LSA-R.S. 40:967(A)(1) with respect to a substance classified in Schedule II which is a narcotic drug, shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars. LSA-R.S. 40:967(B)(1). The defendant was sentenced to serve eight years, six months, at hard *337 labor, with credit for time served, and to pay a $1,000 fine.
The district court considered the sentencing guidelines and stated for the record the considerations it took into account in imposing sentence and the factual basis for the sentence. The sentence imposed was not constitutionally excessive. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. The State referred to January 14, 1993, rather than January 14, 1994, during the first questioning of the officers. This error was due to a mistake by Officer Babin in typing the year on *334 the report he submitted to the district attorney’s office.

. Act 942, § 1, of 1995, effective August 15, 1995, repealed the language in LSA-C.Cr.P. art. 894.1(A), requiring a district court to consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission.