835 So.2d 703 (2002)
STATE of Louisiana
v.
Louis JONES.
No. 2001 KA 0908.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
*705 Walter Reed, District Attorney, Covington, By Dorothy Pendergast, Attorney for the State, Metairie, Counsel for Plaintiff/Appellee State of Louisiana.
Frederick Kroenke, Baton Rouge, Counsel for Defendant/Appellant Louis Jones.
Before: KUHN, DOWNING and GAIDRY, JJ.
GAIDRY, J.
The defendant, Louis Jones, was charged by bill of information with possession of cocaine, in violation of LSA-R.S. 40:967(C). The defendant initially pled not guilty. After a hearing, the defendant's motion to suppress evidence was denied. The defendant later withdrew his not guilty plea and entered a plea of guilty under State v. Crosby, 338 So.2d 584 (La. 1976). The defendant stipulated to a multiple offender bill of information and was adjudicated a second felony offender. The defendant was sentenced to seven (7) years imprisonment at hard labor to be served without the benefit of probation or suspension of sentence. He now appeals, urging as his sole assignment of error that the trial court erred in denying his motion to suppress. For the following reasons, we affirm.

FACTS
On the night of April 30, 2001, Agent Denise Smith of the Louisiana State Probation and Parole Department noticed the defendant and another black male coming out of the back door of Gloria's Lounge in Slidell, Louisiana. According to Smith, the defendant and the other male completed a hand-to-hand exchange, while walking very close together. Smith was accompanied by Agent Mike Phelps and Agent Robert Hall. Smith informed Phelps of her observations and of the fact that she recognized the defendant as being under the supervision of the probation and parole office.
Smith exited her vehicle and approached the defendant and the other male as they were walking. Smith inquired, "Hey, dude, what's your name?" The defendant kept walking and ignored Smith's inquiry. Smith then stated, "Hey, dude, I asked you what your name was." Phelps approached the other male who was walking with the defendant and began talking to him. Smith continued to follow the defendant. The defendant eventually replied by telling Smith that his name was John Smith and continued to walk away. Agent Smith did not believe that the defendant's name was John Smith and she stated, "Hey, dude, wait a minute, I want to talk to you." The defendant then began to walk at a faster pace in a sideways direction away from the agent. Smith then stated, "Hey, dude, you don't want to run, I just want to ask you something." The defendant then started to run away from Smith.
Smith ran after the defendant and, according to her testimony, was able to keep up with the defendant because he kept putting his hands in and out of his pants *706 pockets. When they ran into a lighted area, Smith saw the defendant drop some shiny items out of his pocket. At this point, Hall was coming up behind Smith, who continued to run after the defendant. The defendant jumped over a ditch, and Smith attempted to jump over the same ditch. She, however, landed in the middle of the mud-filled ditch. Smith cursed as she fell into the ditch and the defendant, as he turned around to look at her, collided with a tree.
At that point, Smith pulled out her weapon and the other agents helped her out of the ditch and helped her place the defendant in handcuffs. The agents went back to the lighted area where Smith saw the defendant drop some shiny items out of his pocket. Smith recovered a small tinfoil packet containing a rock-like substance suspected to be crack-cocaine. The defendant was arrested and ultimately pled guilty to possession of cocaine.

ASSIGNMENT OF ERROR NUMBER ONE
In his sole assignment of error, the defendant contends that the trial court erred in denying his motion to suppress the evidence. The defendant argues that Agent Smith did not have the authority to stop him because the facts did not provide probable cause to believe that a crime was being committed. He submits that, under the circumstances, it was reasonable to believe that the hand-to-hand exchange consisted of non-criminal activity. He further states that there is no evidence of reasonable suspicion, reasonable cause, or an emergency situation that would justify Smith's actions.
The Fourth Amendment to the United States Constitution and Article I, section 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La.Code Crim. Proc. art. 703(A). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4th Cir.9/22/99), 752 So.2d 192, 193-94.
Parole officers are granted powers of arrest and detention of parolees under LSA-R.S. 15:574.8 (as amended by 2001 La. Acts No. 608, § 1) as follows:
A. Incidental to the supervision of parolees, parole officers shall be deemed to be peace officers and shall have the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables and police officers have in their respective jurisdictions. They have all the immunities and matters of defense now available or hereafter made available to sheriffs, constables and police officers in any suit brought against them in consequence of acts done in the course of their employment.
B. If a parole officer has reasonable cause to believe that a parolee has violated or is attempting to violate a condition of his parole and that an emergency exists, so that awaiting action by the board under R.S. 15:574.7 would create an undue risk to the public or to the parolee, such parole officer may arrest the parolee without a warrant or may authorize any peace officer to do so. The authorization may be in writing or oral, but if not written, shall be subsequently confirmed by a written statement. The written authorization or subsequent confirmation shall set forth that, in the judgment of the parole officer, the person to be arrested has violated or *707 was attempting to violate a condition of his parole. The parolee arrested hereunder, if detained, shall be held in a local jail, state prison, or other detention facility, pending action by the board. Immediately after such arrest and detention, the parole officer concerned shall notify the chief probation and parole officer and submit a written report of the reason for the arrest. After consideration of the written report, the chief probation and parole officer shall, with all practicable speed, make a preliminary determination, and shall either order the parolee's release from detention or proceed promptly in accordance with R.S. 15:574.7.
See also La.Code Crim. Proc. art. 899(B). Parolees and probationers have a reduced expectation of privacy and do not have the same freedom from governmental intrusion into their affairs as does the ordinary citizen. See State v. Malone, 403 So.2d 1234, 1238-39 (La.1981).
Reasonable cause for detention has been said to be something less than probable cause and is to be assessed according to the totality of the facts and circumstances known to the police officer, from which in retrospect it can be determined whether an infringement on the individual's right to freedom from governmental interference was constitutionally permissible. See State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Belton recognizes that flight, nervousness, or a startled response to the sight of a police officer is, of itself, insufficient to justify an investigatory stop, but nevertheless may be "highly suspicious," and may be considered along with other facts and circumstances in the reasonable cause inquiry. Belton, 441 So.2d at 1198. The officer's experience "on the street" also may be considered in assessing whether he made reasonable inferences from the facts at hand. State v. Meyers, 520 So.2d 842, 845 (La.App. 3rd Cir.1987).
In the instant case, the record reflects that the defendant was in fact on parole. The defendant was first seen exiting the back door of a bar, Gloria's Lounge, during the late evening hours. Gloria's Lounge was located in an area of high drug activity and the parole officers were accustomed to observing drug transactions and effecting arrests in that area. Agent Smith witnessed the defendant making a hand-to-hand exchange with another male while they were walking close to one another. She also recognized the defendant as being under the supervision of the parole and probation office. The defendant ignored the officer's request to talk to him and continued walking. He began to walk sideways before running away from the officer. While running, the defendant was placing his hands in and out of his pants pockets. The officer then witnessed the defendant drop a shiny item out of his pocket. Smith eventually detained the defendant with the help of other agents, and walked back to the area where she saw the defendant drop something shiny from his pocket. She recovered and opened the tin foil packet and it contained a rock-like substance suspected to be crack-cocaine. The defendant was then arrested.
Smith had a particularized suspicion based on articulable facts, and not merely a generalized suspicion or hunch, that the defendant was violating the conditions of his parole and was involved in illegal activity. Furthermore, the level of suspicion at the time of the arrest exceeded the requirements of reasonable cause and was sufficient to form probable cause to believe that the defendant was engaged in illegal activity. The above circumstances constituted an emergency situation such that awaiting action by the parole board would *708 have created an undue risk to the public and/or the parolee. The undue risks of this urgent situation included the imminent danger of the destruction of evidence, the need to prevent the defendant's escape, and the possibility of a violent confrontation that could cause injury to the officers and the public. We find, under the facts and circumstances of the instant case, Agent Smith had the authority under LSA-R.S. 15:574.8(B) to arrest the defendant.
Moreover, under LSA-R.S. 15:574.8(A), Agent Smith had the authority to act as a law enforcement officer. It is well settled that if property is abandoned without any prior unlawful intrusion into the citizen's right to be free from governmental interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy, and, thus, no violation of a person's custodial rights. State v. Nelson, 95-1202, pp. 3-4 (La.App. 1st Cir.4/30/96), 674 So.2d 329, 332; LSA-R.S. 15:574.8. Thus, the defendant's reduced expectation of privacy as a parolee was further diminished to no expectation of privacy, as he abandoned the property without any prior unlawful intrusion into his rights.
In the instant case, the defendant was not "actually stopped" before he abandoned the property since he did not submit to the parole officer's show of authority and was not physically contacted until he was detained and arrested. See State v. Tucker, 626 So.2d 707, 712 (La. 1993) (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). While the Fourth Amendment protects individuals from actual stops, Article 1, § 5 of the Louisiana Constitution also protects individuals from "imminent actual stops." State v. Tucker, 626 So.2d at 712. In determining whether an "actual stop" of an individual is "imminent," the focus must be on the degree of certainty that the individual will be "actually stopped" as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an "actual stop" of the individual is "imminent." Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. State v. Tucker, 626 So.2d at 712-13.
The facts of the instant case clearly reveal that neither an actual nor imminent actual stop took place before the defendant abandoned the evidence. The defendant was not surrounded at the time that Smith attempted to stop and question him. She did not draw her weapon until after the defendant had abandoned the evidence and jumped across a ditch. In fact, when Smith landed in the ditch, it appears the defendant would have escaped had he not collided with a tree. The level of force used by Agent Smith did not provide a significant degree of certainty that an actual stop of the defendant would result. Therefore, the evidence was legally seized. *709 At the time of the arrest there was not only reasonable cause, but also probable cause to believe that the defendant had violated a condition of his parole and committed criminal activity. We do not find that the trial court erred in denying the defendant's motion to suppress the evidence. This assignment of error is without merit.

CONCLUSION
For the reasons set forth in this opinion, we affirm the conviction and sentence of the defendant, Louis Jones.
CONVICTION AND SENTENCE AFFIRMED.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurs and assigns reasons.
I concur in the result. I believe Officer Smith made a proper arrest pursuant to her "powers with respect to criminal matters" under La. R.S. 15:574.8A. Any reliance on La. R.S. 15:574.8B is misplaced. The major thrust of section A involves law enforcement and criminal violations, as we have here. The major thrust of section B involves parole violations.
I am particularly bothered by the specific terms of section B, which require the existence of an "emergency" and "undue risk to the public or the parolee." While the situation before us may meet the Black's Law Dictionary definition of an emergency, I do not see a risk to the public or the defendant. The majority cites no law for the conclusions it draws in this regard, and these conclusions are a stretch, if they can be reached at all. But since the arrest was perfectly proper under Officer Smith's authority pursuant to La. R.S. 15:574.8A, the result is correct and I concur.