STATE OF LOUISIANA
v.
EUGENE HONORA, JR.
2007 KA 2157
Court of Appeals of Louisiana, First Circuit.
March 26, 2008.
WAITER P. REED, District Attorney, KATHRYN LANDRY, Special Appeals Counsel Baton Rouge, LA, Attorneys for State of Louisiana.
HECTOR R. LOPEZ, TOLEDANO, HERRIN & LOPEZ, Covington, LA, Attorney for Defendant-Appellant, Eugene Honora, Jr.
BEFORE: PARRO, KUHN, AND DOWNING, JJ.
PARRO, J.
The defendant, Eugene Honora, Jr., was charged by bill of information with one count of possession of a firearm or carrying a concealed weapon after having been convicted of simple burglary, a violation of LSA-R.S. 14:95.1. He pled not guilty, and he waived his right to a jury trial. Following a bench trial, he was found guilty as charged. He moved for a post-verdict judgment of acquittal and for a new trial, but the motions were denied. He was sentenced to eleven years of imprisonment at hard labor, with ten years of the sentence to be served without benefit of parole, probation, or suspension of sentence. He now appeals, designating four assignments of error. We affirm the conviction and sentence.

ASSIGNMENTS OF ERROR
1. The trial court erred in refusing to allow Alvin Barnes, a defense witness, to testify.
2. The trial court erred in denying the motion to suppress because the state failed to show grounds for the initial stop of the vehicle.
3. The trial court erred in denying the motion to suppress because the police did not have reasonable suspicion to stop the defendant.
4. The trial court erred in finding the defendant guilty as charged because the state failed to prove the case beyond a reasonable doubt.

FACTS
On November 17, 2006, at approximately midnight, Officer David Harley Williams and Sergeant David Osborne, with the Covington Police Department, responded to a complaint of traffic blocking the street and loud music coming from vehicles in front of the Melody Lounge in Covington. The area was known to the police as a high-drug-crime area. While the officers were outside the lounge, a vehicle approached them playing loud music, and they issued the driver a citation for the offense. See LSA-R.S. 14:103.1.
Thereafter, the police officers heard loud music coming from another vehicle that was approaching them, but was still a block away. Sergeant Osborne initiated a traffic stop of the vehicle and approached the driver, Alvin Barnes. As soon as Barnes rolled down his window, Sergeant Osborne detected an odor coming from the vehicle which he recognized as the smell of marijuana. Sergeant Osborne ordered Barnes to shut off the vehicle and instructed Officer Williams to get the passenger, the defendant, out of the vehicle and "pat him down." Sergeant Osborne indicated that he was attempting to make the situation as safe as possible because "drugs and guns seem to go together." Sergeant Osborne patted down Barnes and found two bags of marijuana on his person. Barnes told the defendant to "step out[.]" Officer Williams ordered the defendant to get out of the vehicle and place his hands on the vehicle.
The defendant opened the passenger-side door and Officer Williams also detected the odor of marijuana coming from the vehicle. The defendant began running away, and Officer Williams began chasing him. According to Officer Williams,[1] during the chase, the defendant held his pants with his left hand and dug "in his pocket, in his waist side toward his pocket area with his right hand." As the defendant and Officer Williams approached the side of the Melody Lounge, the defendant pulled out a pistol and threw it to the ground. Officer Williams noted that a pipe was sticking out of the Melody Lounge in the area the defendant threw the weapon down. No one else was present in the area. Shortly thereafter, Officer Williams caught the defendant and arrested him. After placing the defendant in the back of a police car, Officer Williams retrieved the handgun he had seen the defendant throw down, a loaded 9 mm. pistol, and also retrieved a cellular telephone from the area where he arrested the defendant. The weapon was dry, although the grass was wet with dew.
The defendant conceded he had prior convictions for possession of marijuana, possession of cocaine, simple burglary, and theft. He also conceded he ran from the police on the night in question. He claimed he only ran, however, because Barnes told him that Barnes had marijuana and he (the defendant) did not want to be charged along with Barnes for possession of marijuana. He denied having a gun on the night of the incident, and claimed he had never had a gun because he did not like them.

REFUSAL TO ALLOW ALVIN BARNES TO TESTIFY
In assignment of error number 1, the defendant argues the trial court erred in not allowing Barnes to testify and/or, at the very least, giving Barnes rather than the trial court and/or the district attorney's office the opportunity to assert his Fifth Amendment rights.
After the defense called Barnes to the stand during trial, the state advised the court that Barnes was represented by counsel, Ralph Whalen; the state had spoken to Whalen "maybe a half hour ago[;]" Whalen was infuriated that he had not been contacted in regard to the instant case, and that Barnes was in court; Barnes had a Fifth Amendment Privilege; and there was a pending charge against Barnes "in screening" that "would make it a felony charge." The trial court stated, "If [Barnes] has pending charges and there is a chance that he's going to get on the stand and incriminate himself, I am not going to let him take the oath. Because once he takes the oath he is sworn to tell the truth." The defense stated, "Yes, Your Honor[,]" and called another witness.
The instant argument was not preserved for appeal. An irregularity or error cannot be availed of after verdict unless, at the time the ruling or order of the court was made or sought, the party made known to the court the action which he desired the court to take, or of his objections to the action of the court, and the grounds therefor. LSA-C.Cr.P. art. 841; see LSA-C.E. art. 103(A)(2).

MOTION TO SUPPRESS
In assignment of error number 2, the defendant argues the state failed to show reasonable suspicion for the traffic stop. In assignment of error number 3, the defendant argues the state failed to lay a foundation that Sergeant Osborne and Officer Williams had any knowledge, training, or expertise as to marijuana and its smell.
Initially, we note that the defendant failed to raise any objection to the knowledge, training, or expertise of either Sergeant Osborne or Officer Williams concerning detecting the smell of marijuana, and thus may not attack the trial court's ruling on the motion to suppress on this basis for the first time on appeal. See LSC.Cr.P. art. 841; LSA-C.E. art. 103(A)(1).
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. LSA-C.Cr.P. art. 703(A). A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, 01-0908 (La. App. 1st Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 02-2989 (La. 4/21/03), 841 So.2d 791.
A three-tiered analysis governs the Fourth Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. State v. Caples, 05-2517 (La. App. 1st Cir. 6/9/06), 938 So.2d 147, 154, writ denied, 06-2466 (La. 4/27/07), 955 So.2d 684.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1(A) provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is insufficient to justify custodial interrogation even though the interrogation is investigative. Caples, 938 So.2d at 154.
Lastly, at the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Louisiana Code of Criminal Procedure article 213(3) uses the phrase "reasonable cause."[2] The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. Caples, 938 So.2d at 154.
The Louisiana Supreme Court has recognized that in regard to brief investigatory stops, the level of suspicion required to justify the stop need only rise to the level of some minimal level of objective justification. In determining whether sufficient suspicion existed for the stop, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might well elude an untrained person, while also weighing the circumstances known to the police, not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. Caples, 938 So.2d at 154-55.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. State v. Waters, 00-0356 (La. 3/12/01), 780 So.2d 1053, 1056 (per curiam).
State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984), recognized that flight, nervousness, or a startled response to the sight of a police officer are, by themselves, insufficient to justify an investigatory stop, but nevertheless may be "highly suspicious," and may be considered along with other facts and circumstances in the reasonable cause inquiry. Jones, 835 So.2d at 707. Under Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), however, flight is not the equivalent of a mere refusal to cooperate for purposes of the Fourth Amendment. State v. Lewis, 00-3136 (La. 4/26/02), 815 So.2d 818, 821 (per curiam), cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002).
It is well settled that if property is abandoned without any prior unlawful intrusion into the citizen's right to be free from governmental interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. Jones, 835 So.2d at 708.
While the Fourth Amendment protects individuals from actual stops, Article 1, § 5 of the Louisiana Constitution also protects individuals from "imminent actual stops." State v. Tucker, 626 So.2d 707, 712 (La. 1993). In determining whether an "actual stop" of an individual is "imminent," the focus must be on the degree of certainty that the individual will be "actually stopped" as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an "actual stop" of the individual is "imminent." Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Jones, 835 So.2d at 708.
Prior to trial, the defense moved to suppress the evidence to be used by the state as seized without a search warrant or exception to a search warrant. At trial, the defense argued, "there was no way for the officers to know at any time that [the defendant] had engaged in any criminal activity whatsoever." The court denied the motion to suppress, noting, "I think once the vehicle was stopped and the officer smelled marijuana, burned marijuana, I believe, was testified to, that they certainly had probable cause that a crime had been committed and to take everybody out of that vehicle and pat them down. And other than that, I've heard no argument as to why it was not a good stop."
There was no abuse of discretion in the denial of the motion to suppress. The traffic stop of the vehicle driven by Barnes, and in which the defendant was a passenger, was supported by probable cause, based upon the hearing of Sergeant Osborne and Officer Williams, to believe that Barnes had violated LSA-R.S. 14:103.1. See Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Thereafter, both Sergeant Osborne and Officer Williams detected the odor of marijuana coming from the vehicle in a high-drug-crime area. While the defendant attempted to escape from the investigatory stop by running away, Officer Williams personally saw him throw down the firearm at issue.
The defendant was not "actually stopped" before he abandoned the firearm since he neither submitted to a police show of authority nor was he physically contacted until he was captured by Officer Williams. See Tucker, 626 So.2d at 712 (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).
Nor was an actual stop of the defendant imminent before he abandoned his firearm. The defendant quickly distanced himself from Officer Williams. Further, the defendant was never pursued by more than one police officer, and that police officer was on foot and did not have his weapon drawn. Additionally, the area of the incident took place at night in an area with numerous locations for the defendant to conceal himself. Therefore, the defendant's firearm was abandoned without any prior unlawful intrusion into the defendant's right to be free from governmental interference and was lawfully seized.
Moreover, even assuming the pursuit of the defendant signaled that an actual stop of the defendant was imminent, the totality of the circumstances known to Officer Williams at the time, i.e., the defendant's being a passenger in a vehicle emitting the odor of marijuana in a high-drug-crime area and being driven by someone in physical possession of marijuana, his running with his hand in his pocket, and his headlong flight from Officer Williams, gave rise to reasonable suspicion for an investigatory stop prior to the abandonment of the defendant's firearm. See Lewis, 815 So.2d at 821.
These assignments of error are without merit.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number 4, the defendant argues the state did not prove the case beyond a reasonable doubt because: defense witnesses testified that they did not see the defendant with a gun on the day of the incident or at the time of the incident; the defendant denied that he possessed a gun; only Officer Williams saw the defendant with a gun, and he is blind in one eye; Officer Williams testified at trial that the defendant threw down a weapon, but stated in a police report that the defendant "dropped" a weapon, and he claimed he did not stop or feel threatened when the defendant threw down the gun; there was no proof that the gun could be fired; and the state failed to obtain fingerprints from the defendant and compare them to fingerprints on the gun.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove, in order to convict," every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, and 00-0895 (La. 11/17/00), 773 So.2d 732 (quoting LSA-R.S. 15:438).
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 730 So.2d at 487.
It is unlawful for any person who has been convicted of simple burglary, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, to possess a firearm or carry a concealed weapon. LSA-R.S. 14:95.1(A).
After a thorough review of the record, we are convinced a rational trier of fact could conclude that the evidence, viewed in the light most favorable to the state, proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies and the defendant's identity as the perpetrator of that offense. The defendant basically argues that the trial judge erred by accepting the testimony of Officer Williams rather than the testimony of the defendant and certain defense witnesses. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Lofton, 96-1429 (La. App. 1st Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. The trial court reasonably rejected the hypothesis of innocence presented by the defense, i.e., that the defendant did not throw down the weapon recovered during the incident, and the evidence did not support another hypothesis that raised a reasonable doubt. In reviewing the evidence, we cannot say that the factfinder's determinations were irrational under the facts and circumstances presented to him. See State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 662. There is no requirement under LSA-R.S. 14:95.1 that the firearm be capable of firing. State v. Felder, 36,228 (La. App. 2nd Cir. 8/14/02), 823 So.2d 1107, 1110. In regard to the defendant's challenge to the state's failure to present fingerprint analysis tying the defendant to the weapon recovered during the incident, we note Officer Williams testified that he did not process the weapon for fingerprints because his fingerprints were on the weapon after he unloaded it for safety reasons. Further, St. Tammany Parish Sheriff's Office Crime Scene Technician and Fingerprint Examiner Lloyd Thomas Morse testified that the chance of recovering the fingerprints of a person who threw down a gun after the gun was unloaded by someone else "would be slim."
This assignment of error is without merit.

REVIEW FOR ERROR
Initially, we note that our review for error is pursuant to LSA-C.Cr.P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." LSA-C.Cr.P. art. 920(2).
The trial court failed to impose the mandatory fine of not less than one thousand dollars nor more than five thousand dollars. See LSA-R.S. 14:95.1(B). Additionally, the trial court failed to impose the entire sentence without the benefit of probation, parole, or suspension of sentence. See LSA-R.S. 14:95.1(B). Although the failure to impose the fine and the sentencing restrictions constitutes error under LSA-C.Cr.P. art. 920(2), such failure is certainly not inherently prejudicial to the defendant. Because the trial court's failure to impose the fine and the sentencing restrictions was not raised by the state in either the trial court or on appeal, we are not required to take any action. As such, we decline to correct the illegally lenient sentence. See State v. Price, 05-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, 07-0130 (La. 2/22/08), ___ So.2d ___.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Officer Williams conceded he was legally blind in his left eye, but indicated he had perfect vision in his right eye and had no trouble seeing at night.
[2] The "reasonable cause" standard of Article 213(3) is equivalent to "probable cause" under the general federal constitutional standard. To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment. Caples, 938 So.2d at 154 n. 3.